charged it." We think the jury must have understood from this what the court certainly intended—that the whole subject was left to their consideration in accordance with the main charge—and that they could not have been misled by the colloquy between court and counsel as to what the one would have charged, had the other wanted it. It is true that the defendant's counsel excepted at the close of the colloquy, but he also excepted to the final refusal of the court to charge that it was his client's duty to see to it that the scaffolding would bear four times the weight intended to be placed on it, so that no special significance can be attached to the circumstance of the exception.

The result seems a just one. The plaintiff probably might have rested his case, under the statute, upon the mere proof of the breaking, leaving to the defendant the task of exculpation; and as the main ground of error assigned is not presented in the record with that clearness which would alone justify interference, even assuming that legal error is involved, the judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.

---

(89 App. Div. 349.)

### In re WOLFE'S ESTATE.

(Supreme Court, Appellate Division, Second Department. December 30, 1903.)

1. TAXATION—TRANSFER TAX—RENUNCIATION OF LEGACY—TAXATION OF LEG-
ATEE.
    Under the tax law (Laws 1896, p. 881, c. 908) section 242 of which defines a transfer as the passing of property, or an interest therein, in possession or enjoyment, present or future, by descent, devise, bequest, deed, etc., and under the rule of strict construction of tax laws, the transfer tax is not laid on the property transferred, nor on the estate or legatee, but merely on the transfer itself; and, with respect to lega-tees who renounce their legacies, no tax can be collected, but the suc-cession thereupon becomes taxable in accordance with the ultimate devo-lution of the property.

Appeal from Surrogate's Court, Orange County.

In the matter of the transfer tax upon the estate of Christopher Wolfe, deceased. From a decree of the surrogate affirming on appeal the assessment of a transfer tax, Grenville Kane and John Mason Knox, individually and as executors, etc., appeal. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, HIRSCHBERG, and HOOKER, JJ.

Wm. Edmond Curtis, for appellants.

Henry W. Wiggins, for Comptroller of the State, respondent.

HIRSCHBERG, J. The testator bequeathed by will to his execu-tors, the appellants, the sum of $20,000, absolutely. The residue of his estate he gave to the executors in trust for his surviving children, and for the descendants of any child who may have died. He died on the 14th day of June, 1901. The appellants some eight months

afterwards, by appropriate instruments in writing, duly acknowledged, renounced and released the bequest of $20,000, in ample terms, so that the money bequeathed to them should fall into the residuary trust for the benefit of the testator's children and their descendants. By the decree appealed from, the learned surrogate has affirmed an appraisal and assessment by which the legacy in question is taxed at 5 per cent., on the theory that the bequest to the appellants is effective for the purposes of taxation, instead of at 1 per cent., the rate which would be chargeable as against the residuary shares. There is nothing to indicate that the renunciation by the appellants is not in good faith, or that it has been made for the purpose of evading any provision of law in relation to the taxation.

The decision of the learned surrogate is placed upon the ground that under the law the legacy to the appellants became subject to the tax immediately upon the death of the testator, and that the appellants could not defeat the right of the state to that tax, or any part of it, by any subsequent act of their own. The force of this view might be convincing if the tax was imposed upon the legacy, but it is greatly weakened by the consideration that the tax is not imposed upon the property at all, although payable out of it, but is imposed upon the succession to, or transfer of, the property. By section 242 of the tax law (chapter 908, p. 881, of the Laws of 1896) the word "transfer" is defined to include "the passing of property or any interest therein in possession or enjoyment, present or future, by inheritance, descent, devise, bequest, grant, deed, bargain, sale or gift." The transfer tax, therefore, which is the basis of the subject of this controversy, must be regarded as a tax, not upon the money which is the subject of the legacy, but upon the passing of that money under the will, in possession or enjoyment. Had the appellants accepted and taken the legacy, no question could have arisen. Having voluntarily relinquished it, so that it lawfully passes under the will to the testator's children and their descendants, I am inclined to the view that the state can only seize that fraction of it which would have been accessible had the will originally provided for such a devolution.

The tax law supra nowhere expressly provides that a transfer by bequest, deed, or gift which is refused by the beneficiary shall be taxed the same as if accepted. On the theory of the decision herein in the court below, if one person tendered to another a deed or gift to take effect upon the death of the donor, the most positive refusal of the donee to accept the benefaction, and the consequent rendering abortive of the entire scheme, would not avail to avoid the tax. The tax would be imposed in such a case not upon the transfer, but upon the attempt to transfer. If the law contemplated that the tax should be imposed in the case suggested, there is no obvious reason why the purpose should not have been manifested in the statute by explicit expression. To construe the law so as to incorporate such a provision into it is violative of the rule of construction applicable, for it has been often held that the tax law should be construed strictly in favor of the citizen and against the state. Matter of Enston's Will, 113 N. Y. 174, 178, 21 N. E. 87, 3 L. R. A. 464; Matter of Vassar, 127 N. Y. 1, 12, 27 N. E. 394; Matter of Stewart, 131 N. Y. 274,

282, 30 N. E. 184, 14 L. R. A. 836; Matter of Estate of Swift, 137 N. Y. 77, 86, 87, 32 N. E. 1096, 18 L. R. A. 709; Matter of Fayerweather, 143 N. Y. 114, 119, 38 N. E. 278; Matter of Harbeck, 161 N. Y. 211, 217, 55 N. E. 850.

It was held in Matter of Phipps, 77 Hun, 325, 28 N. Y. Supp. 330, affirmed on opinion of the General Term in 143 N. Y. 641, 37 N. E. 823, that, until a legacy is reduced to possession, it is a mere naked right in an estate to be administered, and is not subject to the tax. See, also, Matter of Zefita, 167 N. Y. 280, 60 N. E. 598. The tax has been quite uniformly held to be one upon the transfer or succession, and not upon the property or the estate of the deceased. It was so held in Matter of Hoffman's Estate, 143 N. Y. 327, 38 N. E. 311. In Matter of Gould's Estate, 156 N. Y. 423, 51 N. E. 287, the transfer was, in express terms, to pay the legatee for services; and the court held that, whatever the motive of the testator, inasmuch as the property was given by will, and accepted by the legatee, the performance constituted a taxable transfer, under the act. Chief Judge Parker said (page 427, 156 N. Y., page 288, 51 N. E.):

"It is certainly within the constitutional power of the Legislature to tax all property transferred by will, whether the motive of the testator be to make a gift or pay a debt; and the language, absolutely unambiguous and free from saving clauses, which the Legislature employed to accomplish that result, affords the best indication that the word 'transfer,' in the statute, is used advisedly and according to its ordinary legal signification, which is that the owner of a thing delivers it to another person with the intent of passing the rights which he has in it to the latter. Bouvier's Law Dic. Indeed, it can easily be imagined that the Legislature aimed to prevent parties from avoiding payment of the tax by changing intended beneficiaries into testamentary creditors. It matters not what the motive of a transfer by will may be—whether to pay a debt, discharge some moral obligation, or to benefit a relative for whom the testator entertains a strong affection—if the devise or bequest be accepted by the beneficiary, the transfer is made by will, and the state, by the statute in question, makes a tax to impinge upon that performance."

Referring to the legatee in that case, the learned chief justice said at page 426, 156 N. Y., page 287, 51 N. E.:

"He could have refused compensation in this manner, and, had he done so, whatever sum he might have recovered against the estate under the agreement with his father would not have been taxable under the taxable transfer act, for there would have been in such case no transfer by will."

While this language applies in the case cited to an attempt to pay for services by a testamentary bequest, it is difficult to see why it is not quite as applicable where no debt exists. Surely an intended beneficiary has an equal right with a creditor to refuse a gift; and, if a testamentary bequest is refused, the voluntary relinquishment of the donation by the legatee leaves nothing to be taxed, unless it be the ultimate transfer of property under the will, as necessitated by the relinquishment.

In Matter of Vanderbilt's Estate, 172 N. Y. 69, 74, 64 N. E. 782, 784, Judge Cullen said:

"The fact that the tax is to be paid out of the property does not render it a tax on property. * * * A tax is a property tax when imposed by reason of the ownership of property; a transfer tax when imposed on the method of its acquisition."

In Matter of McPherson, 104 N. Y. 306, 10 N. E. 685, 58 Am. Rep. 502, the court, in construing the act of 1885 (chapter 483, p. 820), said at page 323, 104 N. Y., page 689, 10 N. E., 58 Am. Rep. 502, that the legatee cited to show cause why the tax imposed had not been paid might—

"Allege any reason whatever which shows that he ought not to pay it. He may answer that he has not had an opportunity to be heard upon the appraisal, and that therefore the tax, as to him, is void. He may show any error affecting the validity of the tax, or that he has never received and never will receive the inheritance or legacy; and it would undoubtedly be a justification for refusing to pay that he had absolutely renounced and refused to accept or receive the inheritance or legacy."

In Matter of Gihon's Estate, 169 N. Y. 443, 62 N. E. 561, it was held that the tax could only be computed on the net amount actually paid to the legatee after deducting the trustees' commissions. Judge Cullen said (page 445, 169 N. Y., page 561, 62 N. E.):

"The transfer tax imposed by the laws of this state is a tax, not on the property of the estate, but on the succession by the legatee, devisee, next of kin, or heirs at law to the fortune of the deceased. Personal property does not pass directly from the deceased to his legatee or next of kin, but all that such legatee or next of kin takes is what may be coming to him from the estate on its distribution after settlement. The amount represented by the expenditures of the administrator or the expense of administration never passes to the legatee or next of kin, and therefore is not subject to the tax."

And at page 447, 169 N. Y., page 562, 62 N. E., he said:

"Therefore, though the administrator or executor is required to pay the tax, he pays it out of the legacy for the legatee, not on account of the estate. The requirement of the statute that the executor or administrator shall make the payment is prescribed to secure such payment, because the government is unwilling to trust solely to the legatee."

In Matter of Maresi's Estate, 74 App. Div. 76, 77 N. Y. Supp. 76, this court, following the Gihon Case, supra, permitted a deduction from the bequest for the purposes of taxation of the amount of the expenses of an action instituted by the executors to obtain a judicial construction of the will. See, also, Matter of Silliman, 79 App. Div. 98, 80 N. Y. Supp. 336, affirmed in 175 N. Y. 513, 67 N. E. 1090, and Matter of Dimon's Estate, 82 App. Div. 107, 81 N. Y. Supp. 428.

In Matter of Rogers' Estate, 71 App. Div. 461, 75 N. Y. Supp. 835, affirmed on the opinion of this court in 172 N. Y. 617, 64 N. E. 1125, Mr. Justice Woodward said (page 465, 71 App. Div., page 837, 75 N. Y. Supp.):

"The theory on which taxation of the devolution of estates at the death of their owners is based, and its validity upheld, is that the right to take property by devise is not an inherent or natural right, but a privilege accorded by the state, which may tax or charge for the same. Matter of Dows' Estate, 167 N. Y. 227, 230, 231, [60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508]. The amount of the tax is based, not upon the aggregate value of the estate, but upon the amount which passes to the devisee."

It is made clear by these cases, and others of the same import which might be cited, that the transfer tax is not laid upon the property transferred, nor upon either the estate or the legatee. It is solely upon the transfer; that is to say, upon the change in title or owner-

ship. If no transfer is effected, because it turns out that there is no property to transfer, no tax can be collected; and, if the legatee renounce the gift and refuse to receive it, no tax can be collected with respect to him, because there has been no transfer to him. His right to renounce the privilege of accepting the donation is not denied or forbidden by the statute, and such right is recognized by the authorities, or some of them, which I have cited. On his effective renunciation the title to or ownership of the property of the gift remains in the estate, to be disposed of under the terms of the will, and the succession is taxable in accordance with the nature of the ultimate devolution. The fact that the tax is payable at the death of the testator controls the question of interest, but certainly controls no other question germane to the point now under consideration. There need be no reasonable apprehension that the state government will be seriously embarrassed by renunciations of legacies made in evasion of the law; but, aside from that consideration, it must be borne in mind that the judicial function is essentially expository, and not creative, and that the Legislature can readily provide against the possibility of such evasion if existing laws are not deemed adequate.

It may well be that a different question would be presented by a transfer operating under the laws of inheritance or descent. In such a case the transfer is effected by operation of law, and calls for no act of volition on the part of the heir or next of kin. But assuming the right of an individual to reject proffered bounty, whether tendered by deed to take effect at the grantor's death or by will, I can see no good reason for applying the provisions of the tax law to a mere abortive attempt at a transfer as well as to the consummated act. Whether such a tax upon the mere offer of bounty, or the mere right or privilege of accepting such offer, never availed of, or intended to be, could be lawfully imposed, need not be determined. It is sufficient for present purposes that under the rule of strict construction the precise language of the legislative enactment must furnish at once the measure and the limit of the exaction imposed by the state, and that such language is limited to the transfer of property, as distinguished from the idea, the thought, or the hope of such transfer. The law as it is would seem to require that, under the circumstances of this case, the tax should be levied upon the succession or transfer, as it will actually take place upon the settlement and distribution of the estate, and not as was designed in his will by the testator. No authoritative decision is cited by the learned counsel for the respondent to the contrary, although some loose expressions have been found in opinions which may give color to that view, while the logic of those decisions to which allusion has been made in this opinion certainly justifies, if it does not compel, the conclusion which I have reached.

The decree should be reversed, with costs, and the matter remitted to the surrogate for disposition accordingly. All concur.