A husband and wife deposited moneys with two trust companies, either of them, or the survivor, having power to draw such deposits. In the earlier account the husbands name came first, and in the later one the wife's name came first. The moneys deposited in both accounts previously belonged to the wife, and the checks drawn on the early account were generally signed by the husband to pay household expenses, and the later account was drawn upon by checks signed by the husband with the names of both parties to pay for traveling expenses, and often checks were drawn on the later account and deposited in the first account and disbursed for family expenses. The husband contributed his whole salary to the household expenses. *Held*, on the death of the wife, that the balances in the joint accounts were not subject to the transfer tax.

2. SAME—BEQUESTS TO STEPDAUGHTERS.

Under Transfer Tax Law (Laws 1896, p. 869, c. 908), § 221, as amended by Act June 1, 1905 (Laws 1905, p. 829, c. 368), bequests to stepdaughters of a decedent who had lived in the family since her marriage more than 10 years, and had been cared for from before their fifteenth birthday as her own children, are taxable at the rate of 5 per cent., their father still surviving; the statute providing for a less rate only where the parents of such child shall be deceased when such relationship commenced.

In the matter of the estate of Julia A. Stebbins. Appeal from the report of the appraiser assessing and fixing the transfer tax. Affirmed.

William T. Plumb, for comptroller.
Ernest B. Millard, for executor.

BROWN, S. This is an appeal from an order of the surrogate of the county of Monroe determining and assessing the tax under the transfer tax laws of this state upon the report of the appraiser in the above-entitled proceeding. It is an appeal from parts of an order entered April 2, 1906. Only two portions of the order are complained of: First, the tax of $172.65, levied on the joint accounts in the name of the decedent and her husband, who survived her; second,

the levying of 5 per cent. tax on the shares of the stepdaughters of the decedent instead of a 1 per cent. tax.

First. We will first take up the consideration of the appeal in reference to the tax levied on the joint accounts. It appears from the evidence that in the year 1899 an account was opened in the Fidelity Trust Company in the following form: "H. H. Stebbins, Julia A. Stebbins, either or the survivor of them may draw." Julia A. Stebbins is the decedent. H. H. Stebbins was her husband at the time of the making of the account, and at the time of her death. The money contributed to this account originally belonged to the decedent. Henry H. Stebbins in his testimony says:

"Checks on this account were almost always drawn over my signature and went to pay ordinary household and family expenses, as, for example, tradesmen's bills, clothes, repairs on real estate, subscriptions to charitable objects, and the like."

In the same year another account was opened in the Security Trust Company in the following form: "Julia A. and H. H. Stebbins, either or the survivor of them may draw." The money placed in this account originally belonged to the decedent. As to this account Henry H. Stebbins said in his testimony:

"Almost all of the checks drawn on this account were over the two signatures, both, however, written by myself, and went for the most part for what might be called supplemental household expenses. For example, from this account were often paid traveling expenses, allowances to our children, payments for tuition, and the like. Checks were also often drawn on this Security Trust account in sums usually of an even hundred, to be transferred to an H. H. Stebbins individual account, from which general household expenses were paid."

Mr. Stebbins' testimony showed that at any time either he or the decedent had entire authority to draw out and dispose of all moneys in either or both of these accounts, and that this right was recognized between him and his wife. His testimony further shows that the reason why these moneys were used in this way was that throughout the life of the two joint accounts Henry H. Stebbins was contributing to the household expenses his entire salary of $5,000 a year, while varying sums were contributed by the decedent for the same purpose. In the appraiser's report these moneys have been taxed at $172.65. Julia A. Stebbins, the decedent, died December 14, 1905.

With these facts let us consider the provisions of the transfer tax law in reference to certain legal principles established by the courts in seeking to arrive at a just decision in applying said law to the above facts. We do this particularly because of the fact that we are unable to find any adjudication of any of the appellate courts of this state squarely passing on a matter similar to the one before us. In considering this question we will assume that there are no special facts indicating an intention other than that the husband and wife intended that such deposit should be in their joint names, and that the survivor should take. In this case that appears conclusively so by the evidence. The following legal principles have heretofore been established by the courts:

(1) That the state has the burden of proving the facts justifying the imposition of a transfer tax. Judge Andrews writes:

"The tax imposed by this act is not a common burden upon all the property or upon the people within the state. It is not a general but a special tax, reaching only to special cases, and affecting only a special class of persons. The executors in this case do not, therefore, in any proper sense claim exemption from a general tax or a common burden. Their claim is that there is no law which imposes such a tax upon the property in their hands as executors. * * * But the executors come into court claiming that the special taxation provided for in the law of 1895 is not applicable to them or the property which they represent. In such a case they have the right, both in reason and in justice, to claim that they shall be clearly brought within the terms of the law before they shall be subjected to its burdens. It is a well-established rule that a citizen cannot be subjected to special burdens without the clear warrant of the law." Matter of Enston, 113 N. Y. 174, 21 N. E. 87, 3 L. R. A. 464.

In Matter of Thorn, 44 App. Div. 8, at page 10, 60 N. Y. Supp. 421, the court says:

"The right to impose the tax must rest upon evidence sufficient in probative force to bring it within the statute, and must establish a case from which the law clearly authorizes its imposition." Matter of Miller, 77 App. Div. 479, 78 N. Y. Supp. 930; Matter of Wolfe's Estate, 85 N. Y. Supp. 949, 89 App. Div. 349; Matter of Baker, 83 App. Div. 530, 82 N. Y. Supp. 390, affirmed 178 N. Y. 575, 70 N. E. 1094.

(2) When a statute imposing a tax is susceptible of two constructions, and the legislative intent is in doubt, the doubt should as a rule be resolved in favor of the taxpayer. People ex rel. Mutual Trust Co. v. Miller, 177 N. Y. 57, 69 N. E. 124; McNally v. Field (C. C.) 119 Fed. 446–448; Matter of Fayerweather, 143 N. Y. 119, 38 N. E. 278.

(3) "The tax imposed by the statute in question (as was said in Matter of Baker, 83 App. Div. 533, 82 N. Y. Supp. 390) is a tax on the right of succession, and not on the property itself." Matter of Dows, 167 N. Y. 227, 60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508. "A payment of an obligation dependent upon a valuable consideration is not a succession in any sense." Matter of Miller, 77 App. Div. 473–481, 78 N. Y. Supp. 930.

(4) "The statute is not to have a forced or unreasonable interpretation (Matter of Page, 39 Misc. Rep. 220–222, 79 N. Y. Supp. 382), but its words are to be used in their ordinary legal significance." Matter of Gould, 156 N. Y. 423, 51 N. E. 287; Matter of Wolfe's Estate, 89 App. Div. 349, 85 N. Y. Supp. 949. At page 351 of 89 App. Div., page 950 of 85 N. Y. Supp., the court says:

"If the law contemplated that the tax should be imposed in the case suggested, there is no obvious reason why the purpose should not have been manifested in the statute by explicit expression. To construe the law so as to incorporate such a provision into it is violative of the rule of construction applicable, for it has been often held that the tax law should be construed strictly in favor of the citizen and against the state."

Bearing these principles in mind, let us turn to the statute. Provisions bearing upon this subject are found in sections 220, 242, and 227. Section 220, in enumerating taxable transfers, says nothing in express terms about joint deposits. Section 242 gives definitions, and the words "estate" and "property," as used in the act, are defined "to mean the property or interest therein of the testator, intestate, grantor, bargainor, or vendor, passing or transferred, etc."; the word "transfer" to include "the passing of property or any interest therein

in possession or enjoyment, present or future, by inheritance, descent, devise, bequest, grant, deed, bargain, sale, or gift, in the manner herein prescribed." There is no specific reference to joint deposits. Notwithstanding the years of varied litigation concerning the inheritance tax and the transfer tax, there seems to be no reported case where such joint deposits have been taxed.

The learned counsel for the comptroller, among various arguments for sustaining the validity of this tax, calls attention to the requirements of section 227, which provides that banks shall not transfer or deliver to legal representatives or survivors deposits standing in the joint names of decedent and one or more persons, unless 10 days' prior notice has been given to the comptroller. This was an amendment, by chapter 368, p. 834, Laws 1905, of former section 228, c. 908, p. 872, Laws 1896, amended by chapter 173, p. 383, Laws 1901. This amendment requires the furnishing of information, but does not change the statute as it previously existed as to what is taxable; that is, it does not change section 220 of the tax law. Had the Legislature intended to include joint deposits in taxable transfers, it should have specified it in section 220 at the same time it amended section 227. Matter of Wolfe's Estate, supra.

Now, in the light of the above decisions, do sections 220 and 242 provide for taxation of joint deposits? Are such deposits of the nature that they shall come under the general terms of those sections? It has been repeatedly held that the tax imposed under this act is not upon the property itself which passes, but is a tax upon the right of succession under a will or devolution of intestacy. Notwithstanding changes of phraseology in the statute it remains true that the tax is only upon the right of succession. Matter of Vanderbilt, 172 N. Y. 69, 64 N. E. 782; Matter of Swift, 137 N. Y. 77, 32 N. E. 1096, 18 L. R. A. 709; Matter of Hoffman, 143 N. Y. 327–331, 38 N. E. 311.

The statute has no reference to transfers made upon a valuable consideration, but it relates merely to voluntary transfers without consideration; for the tax, as above stated, is not upon property, but upon the right of succession. Matter of Kimberley, 27 App. Div. 474, 50 N. Y. Supp. 586. The term "right of succession" does not mean a right to receive property pursuant to a contract made during life, which would be enforceable at law, and which would contain ample consideration for the promise to pay;· but, on the other hand, it means a succession without consideration, either by will or intestacy, from a resident or from a nonresident, or such agreement or arrangement voluntary in its nature as may have been made during life in contemplation of death for the express purpose of evading the statute, and deferring the enjoyment of the benefits transferred until the testator's death.

In Matter of Seaman, 147 N. Y. 76, 41 N. E. 403, the court said, in discussing the third subdivision of section 220 of the tax law:

"At this point are evidently referred to grants or gifts causa mortis, that is, those effecting the result of a will or of intestacy by a grant or gift made during life, and so by a different process."

The courts have ruled many a time that deposits of this character are no part of decedent's estate, but the separate property of the survivor. McElroy v. Albany Savings Bank, 8 App. Div. 46, 40 N. Y.

Supp. 422; Platt v. Grubb, 41 Hun, 447. The court at General Term said:

"By reason of the unity of husband and wife, in view of the law, an obligation taken in the name of both enures to the benefit of both, and the 'whole goes to the survivor."

This rule of law is approved in the case of Bertles v. Nunan, 92 N. Y. 152, 44 Am. Rep. 361. In Augsbury v. Shurtliff, 180 N. Y. 138, 72 N. E. 927, it was held:

"An instrument executed by a husband and wife addressed to the savings bank in which each had a separate account, requesting that their accounts be merged so as to run to either or to the survivor of them, constitutes an order that their accounts be changed so as to make each the joint owner of the entirety, so that upon the death of one the survivor would become the owner of the whole. It is executory, however, until presented to the bank and the changes are made, and consequently may be revoked by either party at any time before the order has been complied with."

In Farrelly v. Emigrant Industrial Savings Bank, 92 App. Div. 529, 87 N. Y. Supp. 54:

"Evidence that one Margaret Smith, who had opened a savings bank account in her own name, subsequently procured the passbook to be changed so as to read 'In account with Margaret Smith or son Frank J.' and that, a short time prior to her death, she gave the passbook to her sister with directions to keep the same for her son, whose whereabouts were then unknown, and if he came back to give it to him, is sufficient to authorize a finding that it was the intent of the mother to make her son a joint owner with her in the fund, and upon the death of the mother leaving the son surviving the son took immediate title to the fund by right of survivorship, even though the passbook was not delivered to him during his mother's lifetime."

In Kelly v. Home Savings Bank, 103 App. Div. 142, 92 N. Y. Supp. 578, the court held:

"That it was permissible for Mrs. Beers to give Mrs. Kelly a joint interest with her in the deposit, and an absolute title to the entire deposit in case Mrs. Kelly survived her; that the important question for determination was whether Mrs. Beers intended to create such a joint ownership, or whether the change in the account was made merely as a matter of convenience in drawing the money from the bank."

The act of depositing money in the joint names of a husband and wife indicates an intent to vest the title to the money in the survivor. Wilcox v. Murtha, 41 App. Div. 408, 58 N. Y. Supp. 783; Platt v. Grubb, supra. The deposit, being joint, is in the nature of an agreement or contract between the husband and wife, and is not testamentary; nor does it depend upon the intestacy or the testacy of the decedent. A suit by the survivor for the recovery of the deposit will lie against the bank, whether letters of administration upon the estate of decedent issue or do not issue. "A legacy in payment of a debtor or in discharge of an obligation is not subject to succession tax." 24 Am. & Eng. Ency. of Law (1st Ed.) 446, 447; Matter of Underhill, 20 N. Y. Supp. 134. The same rule was expressly recognized under the United States succession tax law of 1864, under which transfers for a valuable consideration were not taxable. United States v. Hart (C. C.) 4 Fed. 292.

It has also been held that gifts inter vivos are not subject to a transfer tax, on the ground that they were made in contemplation of death, where it does not appear that they were made in bad faith, or

with intent to evade the transfer tax, or accompanied by a trust or reservation under which the dividends upon the stock were to be paid to the donor during his life. Matter of Bullard, 76 App. Div. 207, 78 N. Y. Supp. 491; Matter of Spaulding, 49 App. Div. 541, 63 N. Y. Supp. 694. The liability to the transfer tax depends upon the time when the right of succession passes, and not upon the time when the legatee becomes entitled to the possession of the estate. Matter of Langdon, 11 App. Div. 220, 43 N. Y. Supp. 419. If payment under a contract is deferred by the terms of the contract to the death of the party who is to pay, still, if there is a valid consideration for the payment, the transfer law does not apply.

In Matter of Demers, 41 Misc. Rep. 470, 84 N. Y. Supp. 1109, citing Matter of Baker, supra, it was held that:

"Property passing to the natural daughter of an intestate dying in 1900, under a judgment of the Supreme Court awarding her in 1901 specific performance of a contract her father made with her mother in 1862, by the terms of which upon surrender of the natural daughter to him his property remaining at his death should belong to her, is not subject to the transfer tax, as the transfer was neither by will nor by the intestate laws, nor by bargain and sale, or gift made in contemplation of death, or to take effect in use or enjoyment thereafter."

In the case before us there is no evidence or suggestion that the joint deposit was made with intent to evade the provisions of the transfer tax. That the deposit may come to the survivor is but an incident. The parties could have made a contract providing for the division or payment of the deposit before death. They or either of them could have withdrawn the deposit in their lifetime. The transfer tax law was not intended to impair the obligations of contracts. It would be unconstitutional if it did. People ex rel. Rodgers v. Coler, 166 N. Y. 18, 59 N. E. 716, 52 L. R. A. 814, 82 Am. St. Rep. 605. The intent of the enactment of the transfer tax law appears from the title of the original statute: "An act to tax gifts, legacies and collateral inheritances in certain cases." Laws 1885, p. 820, c. 483.

The theory upon which such taxation of the devolution of estates at the death of their owners is based is that the right to take property by devise is not an inherent or natural right, but a privilege accorded by the state. Debts against the estate may be paid, and their amount may be deducted before fixing the value of the estate for the purposes of taxation; for it is not the property of the estate which is taxed, but the amount transferred under the provisions of a will, or under the statutes of distribution and descent, or by such methods as are used to take the place of a will with the intent of evading the statute, which would include gifts causa mortis, but, as above shown, not gifts inter vivos, unless shown to have been made with the purpose and intent of evading the statute.

Now, whether the property included in these joint deposits between the decedent and her husband was affected by contract or as a gift is immaterial. The gift, certainly, being inter vivos (Matter of Spaulding, supra), would make no difference so long as the gift was absolute; that is, the right to joint ownership in the account, even if the donor under the rights of joint ownership drew it all out, the donee had the same right. In joint ownership, pure and simple, and not arising from mutual convenience, neither party would have a

cause of action against the other for the drawing by the other of the account, even to drawing it all out. Such ownership is based upon confidence reposed by each party in the other. There are cases, no doubt, which do not come under the correct definition of joint deposits in ownership, where accounts are joint accounts as far as the bank is concerned; but the purpose thereof is simply one of convenience, and one of the parties is simply a trustee or agent for the other. In these cases a representative of the decedent could recover the amount remaining in the account or the proceeds thereof from such trustee or agent, in which case the amount would become a part of decedent's estate, and pass under the decedent's will, or if there were no will, according to the laws of intestacy; and then there might be a tax under the transfer tax, according to the amount of the estate of decedent and the relationship of the takers, pursuant to the transfer tax law. But where no claim is made, and no evidence given showing any such trusteeship or contract of agency in the making of a joint deposit account, we are of the opinion that such joint deposit is presumably a contract of joint ownership, vested in both at once, with equal right to use and draw from the same during the lifetime of both, unless exhausted sooner, including the right to survivorship to whatever might remain upon the death of the joint owner dying first.

We are further of the opinion that such transfer is not a transfer by bargain or sale or gift, to take effect in use or enjoyment thereafter, within the meaning of the statute. As we have said above, the survivorship is a mere incident. Let us make an illustration: Suppose a man insures his life in a life insurance company, and makes his wife the beneficiary. He dies before she does, and she collects the insurance by virtue of the contract of insurance between himself and the company and her vested rights under that contract. We assume that no one would presume to claim that the amount of the life insurance so collected by the widow would be taxable under the present transfer tax law. In like manner a joint deposit can be made, whereby the joint interest of the husband and wife vests in both of them joint ownership by virtue of contract or gift (where there is no evidence to show a gift causa mortis, or an intent to evade the statute), which is no more under the statute "to take effect in use or enjoyment thereafter" than in the case of a life insurance contract similar to the one above stated.

We therefore hold that the joint accounts referred to on this appeal are not taxable, and that that portion of the order taxing the same should be struck out, and the order modified accordingly.

Second. The second ground of appeal is that the property coming to the stepdaughters of Julia A. Stebbins, taxed at five per cent., should be taxed at one per cent., on the ground that the said stepdaughters are entitled to the exemption by virtue of their close relationship to the decedent, having mutually recognized each other as parent and child for over 10 years continuously. It seems that in 1878 Julia A. Stebbins, the decedent, was married to Henry H. Stebbins. At that time Henry H. Stebbins had two daughters by a first wife, who were then young children, by name Catherine V. C. Stebbins and Jane B. Stebbins. During the marriage of Henry H. Stebbins and Julia A. Stebbins there were born to them two sons. The relationship which existed between the decedent and these two stepdaughters was identical

with that existing between herself and her sons. Henry H. Stebbins says, in his testimony before the transfer tax appraiser:

"There was never by word or look or deed any difference whatsoever recognized between the two boys who were her own children and the two girls who were not her own children."

And Mrs. Stebbins in her will fully corroborates that statement by the following language:

"I have made the larger provision for my two sons in anticipation of the greater responsibilities they have to meet, and not because of any discrimination otherwise. I will here state that I was married to Henry H. Stebbins on the 11th day of June, 1878. My said daughters Catherine Van Cott Stebbins and Jane Burch Stebbins were then six and four years of age, respectively. Since my marriage they have always spoken to and of me as mother, and upon my part I have always spoken to and of them as my daughters, and have in all respects cared for them, watched over them, and loved them as my own daughters."

The decedent also in the clauses of the will speaks of these stepdaughters as "dear daughter Catherine Van Cott Stebbins, technically my stepdaughter," and "my dear daughter Jane Burch Stebbins, technically my stepdaughter," and, in another place in her will, "my said daughters," following with the names of said two stepdaughters.

Now, there is no question but that these stepdaughters occupied as close a relation in heart, in feeling, and in actual manner of living, to the decedent, as though they had been her daughters in blood. They occupied a relation closer than the usual adopted daughters. They occupied a relation as close, if not closer, than a person who had enjoyed the mutually acknowledged relationship of a child for not less than 10 years. This relationship began before said children's fifteenth birthday, and was continuous for more than 10 years thereafter; and, under section 221 of the tax law, as it stood prior to the amendment adopted by the Legislature in 1905, and which went into effect on the 1st day of June, 1905, the property coming to said stepdaughters under the will of a decedent would have been taxable at 1 per cent. instead of 5. But the amendment of 1905 added, after the words "provided, however, such relationship began at or before the child's fifteenth birthday and was continuous for said 10 years thereafter," the following words:

"And provided also that the parents of such child shall be deceased when such relationship commenced."

Now, it is a fact that Henry H. Stebbins, one of the parents of these stepchildren, is now living. He was living at the time that he married the decedent. Therefore, when this relationship commenced—the relationship existing between the stepdaughters of Henry H. Stebbins and his second wife, the decedent—one of the parents of said children was living. "The parents" of such children were not deceased when such relationship commenced. One was deceased, but the other was not. The statute uses the plural "parents." We find no adjudication as yet upon the construction of this amendment, but the plain English language uses the plural; and, as long as one of the parents of said children shall be living, or, in other words, when both of the parents of such children are not deceased, when such relationship commences, the relationship otherwise existing within the words of the statute

will not entitle children who have a parent or parents living at the commencement of such relationship to become entitled to the exemption under section 221.

This is a case where it does appeal to the court that in equity injustice is done to these stepdaughters. We have considered very seriously the eloquent words spoken by the executor in his address to the court, to wit:

"If there is any conceivable exception to the terms of the statute it should be given in this case."

It seems to the court that if there was any exception that could be made, this would be the case to make the exception; but, under the plain words of the statute, there seems to be no exception.

Accordingly, I am of the opinion that that portion of the order fixing the tax on the shares of Catherine Van Cott Stebbins and Jane Burch Stebbins at five per cent. should be affirmed. As requested by counsel, I submit herewith my findings of fact and conclusions of law upon this entire appeal.

Let an order be entered accordingly, modifying the order heretofore entered herein determining and assessing the tax herein appealed from, by striking therefrom the reference to said moneys and the tax imposed upon the moneys held in the joint accounts, and affirming the remainder of the order.

Decree modified, and, as so modified, is affirmed.