Estate of Johnston: State and another, Appellants, vs. Johnston and others, Administrators, Respondents.

*March 12—April 7, 1925.*

*Taxation: Inheritance taxes: Share in intestate property "renounced" and "abdicated" in favor of educational institution: Taxability: Transfers within six years: Public administrator: Tacit consent to erroneous tax: Review: Application to trial court for rehearing.*

1. A statute which exempts bequests to charitable and educational institutions from the state inheritance tax will be construed favorably in their behalf.   p. 602.
2. While a beneficiary, as a rule, accepts a testamentary provision in his favor, he is under no legal obligation to do so.   p. 602.
3. Property devised and bequeathed by a wife to her husband, who predeceased her, descends as intestate property.   p. 602.
4. An instrument executed by one who had joined the Jesuit order, purporting to be a "renunciation" and "abdication" of his right to any property which might come to him, "in favor of" a college, is in legal effect an assignment.   p. 603.
5. Where a son abdicated his right in property expected through descent from his mother in favor of a college, such property is subject to an inheritance tax, which accrued contemporaneously with the vesting of the right thereto in the son, as he had no authority to change the order of descent or substitute another beneficiary or heir.   p. 605.
6. Where the husband expressly stated that he did not wish to change his will, but requested that at his wife's death the home be turned over to a designated son, a gift of the proceeds of the sale of the home to such son, made within six years of the mother's death, is taxable within the meaning of sub. (3), sec. 72.01, Stats., the gift being in response to a sentiment and not in carrying out the father's will and no adequate valuable consideration having been paid by the son. p. 606.

7. Where the public administrator tacitly consented to an exemption from the inheritance tax, the rule that questions not raised and properly presented for review in the trial court may not be reviewed on appeal is not applicable, since public rights were affected.   p. 608.

8. An application for a rehearing before the county court, under sub. (11), sec. 72.15, Stats., being optional with the parties interested, is not a condition precedent to an appeal, though advisable to avoid the necessity of an appeal.   p. 608.

APPEAL from a determination of the county court of Milwaukee county: M. S. SHERIDAN, Judge.   *Reversed, with directions.*

The appeal is by the *State of Wisconsin* and *Milwaukee County* from a determination of the county court holding certain property belonging to the estate of Ellen A. Johnston, deceased, exempt from taxation under the inheritance tax statutes.

For the appellants there were briefs by the *Attorney General, Franklin E. Bump,* assistant attorney general, and *John Harrington,* inheritance tax counsel, and oral argument by *Mr. Bump.*

For the respondent administrators there was a brief by *Quarles, Spence & Quarles,* attorneys, and *William C. Quarles* and *Howard T. Foulkes,* of counsel, all of Milwaukee, and oral argument by *Mr. Foulkes.*

DOERFLER, J.   One Robert A. Johnston, a resident of the city of Milwaukee, died testate in the year 1907, leaving his estate, valued at a considerable sum over $1,000,000, to his widow, Ellen A. Johnston.   Robert A. Johnston and his wife had four children, namely, Harry S. Johnston, *Walter V. Johnston, Robert S. Johnston,* and Jessie J. Fretz.   In the year 1898 Ellen A. Johnston executed a last will and testament, in and by which she devised and bequeathed all of her estate to her husband.   Robert A. Johnston having predeceased his wife, the estate of the latter when she died in July, 1924, descended to her heirs as intestate property.

The son *Robert S. Johnston* having joined a Jesuit order, on the 14th day of August, 1909, executed a document in Latin, known as an abdication and renunciation, the following being a translation thereof:

"I, *Robert S. Johnston*, of the Society of Jesus, desiring and choosing to have part with Christ the Lord, poor and needy, of my own accord and freely entirely abdicate and renounce whatsoever things to me, even unaware, may have come or may have been able to come, or could in the future come, whether by right of legacy, or donation or profit. This my entire abdication I make in favor of *Marquette College,* in the city of Milwaukee in the state of Wisconsin. And these things I wish to be understood according to the spirit of the constitutions of the Society of Jesus, which I have already embraced as a mother and which I will cherish through all days to come.

"Given at Milwaukee, in *Marquette College,* on the fourteenth day of August, in the year one thousand nine hundred and nine.                    ROBERT S. JOHNSTON, S. J.",

(Duly attested by three witnesses.)

After the death of Ellen A. Johnston her estate was administered in said county court, and in due course of the administration proceedings an application was made for the determination of the inheritance tax. Due notice as required by the statutes was given to all parties interested, including the tax commission of the state of Wisconsin and the public administrator of Milwaukee county, acting as the representative of the state and the county in the matter of the inheritance tax proceeding. At the hearing the said public administrator attended and tacitly consented that one fourth of the estate descending to *Robert S. Johnston,* a son of the deceased, by reason of his abdication and renunciation in favor of *Marquette College,* an educational and charitable institution, be held exempt from an inheritance tax, and the court, accepting such view, made and filed a determination accordingly.

Respondent claims that the courts, in construing the in-

heritance tax laws, look with favor upon bequests to charitable and educational institutions, and that the statute exempting such bequests should be favorably construed in their behalf. To this point respondent cites *Estate of Spangler,* 148 Iowa, 333, 127 N. W. 625; *Morrow v. Smith,* 145 Iowa, 514, 124 N. W. 316; *Estate of Curtis,* 88 Vt. 445, 92 Atl. 965; *Estate of Rockefeller,* 223 N. Y. 563, 119 N. E. 1074. The decisions above referred to fully support the doctrine contended for, and undoubtedly such doctrine as so enunciated constitutes good law, and if in the instant case the one-fourth interest of the estate involved had been devised and bequeathed to the *College,* its applicability would be readily recognized. Renunciations and abdications of parties under a will or under the intestate laws are rather infrequent. The great mass of litigation which comes to a court involving the distribution of the estate of a deceased and the rights of legatees, devisees, and heirs results from dissatisfaction in connection with wills in the distribution of estates. However, occasionally, where property is devised or bequeathed under a will, a renunciation takes place because in connection with the devise or bequest certain more or less onerous terms are imposed which affect greatly the desirability of accepting the provisions made in behalf of the beneficiary. So that while a testamentary provision as a rule is readily accepted, it may be also said that a beneficiary is under no legal obligation to accept. *Matter of Wolfe,* 89 App. Div. 349, 85 N. Y. Supp. 949, affirmed in 179 N. Y. 599, 72 N. E. 1152; *Matter of Cook,* 187 N. Y. 253, 79 N. E. 991.

The will of Ellen A. Johnston made no provision for the benefit of her children, she having made a will in which she devised and bequeathed all of her property to her husband. Her husband having predeceased her, her property descended as intestate property. She survived her husband a period of fifteen years, and during all this time she did not see fit to change her will or to provide for a bequest or a devise to the *College.* All of the property, however, belong-

ing to her estate was subject at all times up to the time of her death to her own individual disposition. She was authorized to give all of it to one of her children, or to all, or to several, or she could have transferred it to total strangers, or she could have selected during her lifetime a portion or all of the property and made a gift thereof to some charitable or educational institution other than *Marquette College.* Similar dispositions might have been made through the instrumentality of a last will and testament. So that up to the time of the death of Mrs. Johnston no one could be deemed to have an interest in her property or her estate.

"Renunciation" is defined by the Century Dictionary as "A legal act by which a person abandons *a right acquired, but without transferring it to another."* The term "abdication" is defined as "The act of abdicating; the giving up of an office, power or authority, right or trust, etc.; renunciation." So that it would appear that the terms "renunciation" and "abdication" as used in the instrument of *Robert S. Johnston* are synonymous. *Robert S. Johnston,* however, did not merely abdicate or renounce his rights to any property, but he abdicated and renounced *in favor of Marquette College.* So that, construing these terms as used by him, they in legal effect amount to an assignment. The *College,* if it derives anything under the instrument executed by *Robert S. Johnston,* obtains it through that portion of the instrument in which any interest coming to him from the estate of his mother is renounced and abdicated in favor of the *College.* The mother at no time prior to her death changed her will, nor did she give any directions, as far as the record shows, to acknowledge such renunciation so as to make the same effective.

In *Matter of Wolfe, supra,* where a legacy of $20,000 was bequeathed absolutely to certain executors, who after the death of the testator renounced such legacy, it was held that the legacy lawfully passed under the will to the testator's children and their descendants, and was taxable at the rate

of one per cent. applicable under the statutes of New York to such beneficiaries, and not at the rate of five per cent., as applicable to strangers. In that case it was also. said:

"That the transfer tax is not laid upon the property transferred, nor upon either the estate or the legatee. It is solely upon the transfer; that is to say, upon the change in title or ownership. If no transfer is effected, because it turns out that there is no property to transfer, no tax can be collected; and if the legatee renounce the gift and refuse to receive it, no tax can be collected with respect to him, because there has been no transfer to him. His right to renounce the privilege of accepting the donation is not denied or forbidden by the statute, and such right is recognized by the authorities, or some of them. . . . On his effective renunciation, the title to or ownership of the property or gift remains in the estate, to be disposed of under the terms of the will, and the succession is taxable in accordance with the nature of the ultimate devolution."

In *Matter of Cook, supra,* the court quotes extensively from the opinion in *Matter of Wolfe* and expressly affirms that decision. Differentiating between property devised and bequeathed in a will and property which descends under the intestate laws, the court in *Matter of Wolfe* says:

"It may well be that a different question would be presented by a transfer operating under the laws of inheritance or descent. In such a case the transfer is effected by operation of law, and calls for no act of volition on the part of the heir or next of kin."

The doctrine involved in *Matter of Wolfe* with respect to a will is not before us in the instant case, and we therefore expressly reserve the question on a similar state of facts if the same should arise in this state under our own laws. However, we expressly acknowledge the force of the quotation from that opinion which refers to property descending under the intestate laws of the state.

Under the laws of descent, the property or the right to property would come or accrue to *Robert S. Johnston* upon

the death of his mother. The *College*, if it is entitled to take at all, takes through him and under him. Immediately upon the mother's death a tax accrued contemporaneously with the vesting of the property or right to property in *Robert*. This leads to the irresistible conclusion that the interest in the estate coming to him is subject to the tax. No right or authority is vested in him to modify or change the order of descent as is provided for by the laws of intestacy. No statutory provision exists for the substitution of another in the place of the heir or beneficiary. If *Robert S. Johnston* assumed such authority, it would be contrary to the statute in such case made and provided.

We therefore conclude that the property coming to *Robert S. Johnston* from the estate of his mother is subject to an inheritance tax, as provided for by the statutes.

In 1907, shortly before the death of Robert A. Johnston, he dictated a letter to Harry S. Johnston, one of his sons, which letter was placed in an envelope, which was indorsed by him as follows: "July 5, 1907. Letter to my wife and children, to be read only in the event of my death." Portions of the letter material herein are as follows:

"Memoranda of wishes that are not to be considered as binding: My will was made several years ago and I have no changes to make in it.

"In case *Walter* marries, would like him and his family to continue to live at home with his mother, and in case of her death the home and contents should go to him. During the time of his living at home with his mother she should pay all ordinary household expenses the same as though *Walter* were at home unmarried. Our home, if accepted by *Walter,* should be considered of equal value, and no more or less, than the 120 feet and improvements at the corner of 22d and Grand Av. owned by our son Harry."

In 1920, being several years prior to Mrs. Johnston's death, she, feeling it a burden to maintain the home, sold it and realized from such sale the sum of $30,000, and this amount she turned over to her son *Walter*. Upon the

inheritance tax hearing it was thought by the public administrator that the sum so paid by Mrs. Johnston to her son *Walter* was not subject to the payment of inheritance tax, and upon the tacit consent of the public administrator, and the court being of like view, a ruling was made accordingly. The state tax commission was of the opinion that this sum of $30,000 was clearly subject to an inheritance tax, and thereupon the appeal herein was taken in part to obtain a reversal of such determination of the county court.

Sub. (3), sec. 72.01, Stats., among other things provides:

"Every transfer by deed, grant, bargain, sale or gift, made within six years prior to the death of the grantor, vendor or donor, of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, shall be construed to have been made in contemplation of death within the meaning of this section."

It is earnestly contended by counsel for the respondent that the delivery of the proceeds of the homestead to *Walter* was made pursuant to a moral obligation of Mrs. Johnston, by virtue of the letter above referred to of her deceased husband. It is not claimed by the respondent that Mrs. Johnston was under any legal obligation to turn this sum of money over to *Walter,* nor is it claimed that Mrs. Johnston did not have the right to act in the premises in accordance with her own volition. That no legal obligation was assumed is made clear by the letter itself, wherein it is said that the wishes therein expressed "are not to be considered as binding." Nor is it contended that the letter referred to in any way changed the will of the writer, for in it he says, "My will was made several years ago and I have no changes to make in it." Therefore, the money paid to *Walter* cannot be deemed a part of the estate of Robert A. Johnston but a part of the property of Mrs. Johnston; and having been paid within the six-year period provided for by the statute, presumptively is a gift and is subject to the inheritance tax.

Estate of Johnston, 186 Wis. 599.

Cases are cited in respondent's brief which in effect hold that where a testator in his will recognizes a moral obligation to a child or children on account of services rendered by the latter to the former, the provision in the will for the benefit of such child or children is not in fact a gift. Such cases, however, present an entirely different situation from that involved in the instant case. No claim herein was made that services had been performed by *Walter* for his father which had not been compensated; on the contrary, it appears that the letter was written and the directions were given in order that provision might be made for *Walter* substantially to the same extent as had been made for the other children. The proceeds were paid to *Walter* more in response to a sentiment than to what may be deemed a moral obligation.

In *Matter of Gould,* 156 N. Y. 423, 51 N. E. 287, the transfer was made in express terms to pay the legatee for services. In the opinion in that case it was said:

"It matters not what the motive of a transfer by will may be—whether to pay a debt, discharge some moral obligation, or to benefit a relative for whom the testator entertains a strong affection—if the devise or bequest be accepted by the beneficiary, the transfer is made by will, and the state, by the statute in question, makes a tax to impinge upon that performance."

So that it will appear from the case just cited that the authorities are not uniform upon the subject, and it would appear to us that the doctrine announced in *Matter of Gould* is the sounder one. If, as in the *Gould Case,* a legacy given for services performed for the testator is taxable as such, then certainly the payment of the large and substantial sum of $30,000 within the six-year statutory period, in response to a mere sentiment, is taxable, and we so hold. Furthermore, sub. (3), sec. 72.01, Stats., requires an adequate valuable consideration, and no such consideration was herein paid.

Respondents' counsel further contend that under the decisions in *Cappon v. O'Day,* 165 Wis. 486, 162 N. W. 655,

and *Harrington v. Downing,* 166 Wis. 582, 166 N. W. 318, it is held that questions not raised and properly presented for review in the trial court may not be reviewed on appeal.

While this rule is firmly intrenched in the decisions of this court it is not applicable to the instant case, for the reason that here the public rights are affected, and in *Will of Porter,* 178 Wis. 556, 190 N. W. 473, it is held that the acts or omissions of public officials cannot conclude the rights of the public. The question, however, was raised in the court below notwithstanding the tacit consent of the public administrator.

Respondents' counsel also urge that before taking the appeal the appellants should have made an application for a rehearing, in accordance with sub. (11), sec. 72.15, Stats. Said section reads as follows:

*"Rehearing in county court.* The attorney general, tax commission, public administrator, district attorney, or any person dissatisfied with the appraisement or assessment and determination of such tax may apply for a rehearing thereof before the county court within sixty days from the fixing, assessing, and determination of the tax by the county court as herein provided on filing a written notice which shall state the grounds of the application for a rehearing. The rehearing shall be upon the records, proceedings, and proofs had and taken on the hearings as herein provided, and a new trial shall not be had or granted unless specially ordered by the county court."

Scrutinizing the language of the section just quoted, it becomes manifest that the application for a rehearing or a new trial is not made a condition precedent to an appeal, and that such application is entirely optional with the parties interested. Such application, however, is advisable, for in many instances it will avoid the necessity for an appeal, and it would appear in the instant case that had such an application been made to the lower court, and the position of the state and county properly presented, no appeal would have become necessary.

*By the Court.*—The determination of the county 'court appealed from is reversed, and the cause is remanded with' directions for further proceedings in the matter of the determination of the inheritance tax in accordance with this opinion.