OPINION OF THE COURT
Renee R. Roth, S.
Incident to this contested probate proceeding in the estate of Francine Meyer DeCameret, the preliminary executors move to strike a notice of appearance by decedent’s grandson, Alexander, for lack of standing. Alexander’s claim to standing rests upon a novel theory concerning the relationship between a general release and a renunciation. The release in this case is an instrument that was executed by his father, decedent’s estranged son, Laurent, settling litigation that she commenced against Laurent after he had failed to repay loans she made to him. Under Alexander’s theory, such release amounted to a renunciation by Laurent of his status as decedent’s distributee and, by operation of law, invested Alexander in turn with such status.
The background of this dispute follows. Mrs. DeCameret died on July 28, 2001, at the age of 77, survived by three children. Under a will and two codicils, she underscored her “long held” determination to disinherit her “family members,” and, but for certain tangibles, left her estate to a private foundation that she had established during her lifetime.
About a month before her death, decedent and her foundation entered into a settlement with Laurent with respect to a judgment of some $3.5 million arising from his defaults on certain notes. The parties executed “General Releases” which provided that the releasor
“release[s] . . . the releasee[S], their heirs, executors, administrators, attorneys, agents, successors and assigns from all actions, . . . debts, dues, sums of money, [etc.] . . . claims, and demands whatsoever, in law, admiralty or equity which against releasees, the releasor, his heirs, executors, administrators, attorneys, agents, successors . . . hereafter can, shall or may, have for, upon, or by reason of *409 any matter, cause or thing whatsoever from the beginning of the world to the date of this release
The counterpart signed by Laurent (the release) ended with the additional phrase, “including any future challenge against the estate of the releasees that the releasor was deprived of all or any part of an expected inheritance.”
As noted above, Alexander claims that the release constitutes not only a waiver by Laurent of his right to contest decedent’s will, but also a “renunciation” (within the meaning of statute [EPTL 2-1.11] and common law [Oliver v Wells, 254 NY 451 (1930)]) of his status as a distributee and that accordingly the standing as decedent’s distributee which his father surrendered passed to him by operation of law.
The question is whether the release is such a renunciation. If it is not, Alexander’s claim to standing is ended without need for any further inquiry as to whether his conceded failure to comply with the formal requirements for effectuating a renunciation (EPTL 2-1.11 [b]) would render it inoperative. The burden rests with Alexander to establish that the general release executed by Laurent was intended to constitute a renunciation.
It is well established that, when an instrument is expressed in terms that clearly and unequivocally give up a right or discharge a claim (such as a waiver or release or renunciation), “effect must be given to the intent of the parties as indicated by the language employed” (Metz v Metz, 175 AD2d 938, 939 [1991]). Concomitantly, in determining the extent to which Laurent gave up his claims upon decedent’s estate, the language of the instrument he executed must be read without resort to extrinsic evidence unless we find such language is ambiguous as a matter of law (Wells v Shearson Lehman/Am. Express, 72 NY2d 11, 19 [1988]).
It is observed that the release was the product of a bargain— the quid pro quo for decedent’s surrender of her own considerable rights against Laurent, including her right to enforce a multimillion dollar judgment against him — rather than the expression of a unilaterally self-serving purpose. It is the type of instrument which is commonly found in a global settlement of a litigation, i.e., where the parties intend to resolve their contest by severing their relationship with one another so that neither can continue the dispute in another forum.
The terms of the release clearly indicate a broad purpose to leave Laurent with no claim in any respect against his mother *410 during her lifetime or against her estate after her death. At the same time, moreover, Laurent expressly relinquished his rights not only on his own behalf, but also on behalf of his “successors and assigns.” In other words, the release reflects the bargainers’ intent to cut every legal tie that ordinarily would have bound decedent to Laurent or his descendants, among others, and it is not the type of instrument that should be pigeonholed into the category of a “renunciation” and thus deemed to have the effect proposed by Alexander. In view of such intent, it would defeat the very purpose of the release if it were construed to act as a renunciation that would allow Alexander back-door access to a claim against which the parties had intended to bar him.
There are of course occasions when the rules governing renunciations may reasonably be applied to a release or like instrument which has not been labeled as a “renunciation” per se. Thus, an individual may have intended to make his arrangements subject to the rules governing renunciations, such as where he intends to claim a resultant tax advantage (see Matter of Wolfe, 89 App Div 349 [1903], affd 179 NY 599 [1904]) or where he intends to place property beyond the reach of a creditor (see Matter of De Lamar, 203 App Div 638 [1922]) or where he and his spouse mutually relinquish interests in one another’s estates as a cornerstone of an antenuptial or postnuptial property settlement where the intent is consistent with the technicalities of a renunciation (see Matter of Ginsberg, 142 Mise 2d 192 [1988] [instrument expressly provided that one spouse would be deemed to have predeceased the other for purposes of disposition being relinquished]). But where, as here, a surrender of interests in another’s estate is only an aspect of a general release in settlement of litigation not directly involving such interests, the court should not infer that the parties intended the release to constitute a renunciation which would result in overriding the spirit of their agreement. Simply put, a contrary result, if imposed by the court in such a context, could create a trap for the unwary in the future. Accordingly, it is concluded that a general release settling litigation cannot be construed to be a renunciation (whether under statute or common law) unless it so specifically provides. Otherwise, the releasor would have an opportunity to make an end run around his own waivers and vitiate the release.
Based upon the foregoing, the motion to strike Alexander’s notice of appearance is granted.