BANK OF COMMERCE & TRUST CO., ADMR. C. T. A. OF THE ESTATE OF ANNIE 'S. FARGASON, DECEASED, *v.* JOHN C. McLEMORE, *et al.*

(*Nashville*, December Term, 1930.)

Opinion filed February 7, 1931.

HOLMES, CANALE, LOCK & GLANKLER, for complainant, appellee.

F. S. HALL and WM. C. COOK, for defendants, appellants.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

By the original and amended bills complainant seeks to enjoin the officials of the State from making an illegal inheritance or succession tax against the estate of Annie S. Fargason.

The questions involved were raised by demurrers, which the chancellor overruled. Defendants elected to stand upon their demurrers and declined to further plead; whereupon the chancellor decreed that the temporary injunction, theretofore granted, be made permanent. The defendants have appealed and assigned errors.

Annie Snowden Fargason died testate on October 13, 1924. She named her husband, John T. Fargason, execu-

tor of her will, but he declined to qualify; whereupon complainant was appointed administrator *cum testamento annexo*, and duly qualified.

The gross value of Mrs. Fargason's estate was $1,619,882.27, which consisted of money, stocks, bonds, and numerous lots and tracts of land.

In order to file a report giving the value of the estate, in compliance with chapter 46, Public Acts of 1919, it was necessary for complainant to employ experts to appraise said property, which it did at a cost of $335.43.

On March 31, 1925, complainant filed with the County Court Clerk of Shelby County an itemized inventory of said estate, which report contained the gross market value of each item.

On April 13, 1925, the county court clerk filed his written report, in which he fixed the taxable clear market value of the estate at $1,119,742, and upon that valuation computed the tax to be $48,562.10. Upon that day complainant paid said tax, less a discount of five per cent authorized by the Act of 1919.

On June 9, 1925, the Commissioner of Finance and Taxation filed exceptions to said report, and commissioners were appointed to reappraise the estate, but they had taken no action when the original bill was filed herein on November 18, 1925.

In arriving at the clear market value of the estate the county court clerk deducted three items, which are the basis of the errors assigned in this court, viz.: (1) the expense item of $335.42, referred to above; (2) the federal estate tax of $128,057.42; and (3) four pieces of real estate valued at $249,300, which Mrs. Fargason received by devise from her mother, Mrs. Annie B. Snowden, who died in 1923, and on which property inheritance taxes

were duly paid by the estate of Mrs. Snowden. It is conceded that this last item was properly deducted if chapter 64, Acts of 1925, is valid.

By the first and fifth assignments of error the jurisdiction of the chancery court to determine the questions involved is challenged. It is insisted that the remedy provided by the Act of 1919 should have been resorted to, viz.: have an appraisal by the commissioners, appeal from their decision to the Railroad Commission, and thence by *certiorari* to the circuit court.

It will be observed that no questions of fact are involved; the value placed upon the estate by the clerk is not challenged; but the questions raised are altogether legal and relate to the action of the clerk in deducting the three items, referred to above, in arriving at the clear market value of the estate.

These assignments of error are without merit, for it has long been held by this court that the chancery court has jurisdiction to enjoin the making of an illegal assessment. *Nat. Bank et al.* v. *Shipp,* 160 Tenn., 311; *Fertilizer Co.* v. *McFall,* 128 Tenn., 647; *Express Co.* v. *Patterson,* 122 Tenn., 279; *Smoky Mountain, etc., Co.* v. *Lattimore,* 119 Tenn., 620; *Briscoe* v. *McMillan,* 117 Tenn., 126; *Bank* v. *Memphis,* 107 Tenn., 72; *Alexander* v. *Henderson,* 105 Tenn., 430; *Ward* v. *Alsup,* 100 Tenn., 746; *Bank* v. *Chattanooga,* 55 Tenn., 814.

The second assignment of error complains of the action of the chancellor in holding the federal estate tax deductible.

The Act of 1919 has been expressly repealed by chapter 29, Acts of the Extra Session of 1929, which latter act expressly provides that in computing the State tax the federal estate tax shall not be deducted. The Act of 1919

does not expressly refer to the federal statute. The decided weight of authority holds that, in the absence of an express provision to the contrary, the estate tax should be deducted.

The cases in which this question has been considered have been collected in the American Law Reports Annotations. In volume 44, page 1461, some of the cases are listed, and reference is there made to other volumes where previous decisions can be found. Different reasons are given in support of both the majority and the minority rule.

The Federal Estate Tax statute was enacted in 1916. Presumably the members of the legislature were familiar with it when they passed the act in question in 1919. The legislature could have easily provided for the inclusion of this tax in computing the State tax.

In view of the previous decisions of this court, we are of the opinion that the Act of 1919 was not intended as a strict estate tax, as that term is defined in the authorities, but rather as an inheritance or succession tax. This court, in construing previous statutes of this character, had held repeatedly that the tax was one imposed upon the beneficiary for the privilege of acquiring the estate by succession. *State* v. *Alston,* 94 Tenn., 674; *English* v. *Crenshaw,* 120 Tenn., 531; *Knox* v. *Emerson,* 123 Tenn., 409; *Crenshaw* v. *Moore,* 124 Tenn., 528.

In these cases it was further held that such statutes must be strictly construed against the State and in favor of the taxpayer.

Since the beneficiary only receives that part of the estate which is left after deducting the federal tax, it seems unjust to require him to pay a tax on something he never becomes the owner of.

There is no substantial difference between previous statutes and that of 1919. In previous acts the requirement was "that all estates" are subject to a tax. If these acts were given a technical or literal construction, it might be argued with plausibility that they were estate statutes, but this court held them to be inheritance or succession statutes.

The Act of 1919 provides that a tax is imposed "upon every transfer of property," when the transfer is by will or by the intestate laws of the State; "and the person to whom the property is so transferred, and the executor, administrator or trustee of said estate so transferred, shall be personally liable for said tax until it is paid." In other words, the beneficiary is personally liable for a tax upon the property received. Since he can never receive the money paid in satisfaction of the federal tax he should not be charged with a tax thereon.

The statutes of Kentucky and Massachusetts provide that "all property which shall pass by will or by intestate laws of this state . . . shall be subject to a tax." A "transfer of property" and a "passing of property," as used in such statutes, mean substantially the same thing. In holding the federal tax deductible the Supreme Court of Massachusetts, in *Hollis* v. *Jackson,* 23 A. L. R., 850-851, speaking through Chief Justice RUGG, said:

"It is plain as a practical matter that the amount of money so paid for excise taxes never passes to anybody by succession from the deceased resident. Money so paid is a pecuniary burden laid for the support of government upon the privilege of transmitting and receiving property by will or by intestate succession. A succession tax law ought not to be so interpreted as to exact an excise of the succession of that which in fact cannot pass to any

beneficiary because seized by the state on its way from the dead to the living, unless the words of the statute leave no other alternative. *Newcomb* v. *Paige,* 224 Mass., 516, 113 N. E., 458. Such a tax, apart from its technical legal significance, would be in substance and effect a tax on a tax, and not a tax on the succession of property.''

The Court of Appeals of Kentucky, in *Bingham's Adm'r,* v. *Commonwealth,* 196 Ky., 318, 244 S. W., 787, in holding the Federal Act deductible, said:

''We think it is clear, therefore, that the opinions of the courts accepting the minority view, and relied upon by the commonwealth, are based upon reasons too diverse and, as will later appear, too variant from our conception of our own law's meaning to justify our acceptance of the minority view, even if, as counsel for the commonwealth insists, there is very little agreement between the courts adopting the majority view as to the principles upon which their decisions are based.

''In view of the length to which this opinion will be necessarily extended, we cannot attempt to harmonize all the reasoning upon which the courts of last resort in ten states have reached the same conclusion, that the federal tax is deductible before computing the state inheritance tax. We think it sufficient to say that in all of them the deduction was allowed principally, if not solely, because of a conviction that the state law contemplated an assessment of the state tax upon the net beneficial interest that the recipient would actually receive, rather than upon the interest which theoretically and technically may have passed under the will or gift of the decedent, but which before it beneficially reached the transferee was lessened by the federal tax on the transaction. This construction of a state inheritance tax law is desirable, if permissible

under the language in which it is expressed, since it makes it fair and just, and relieves the court of imputing to the Legislature an intention to levy a tax upon the federal tax which the recipient of the estate could never receive or enjoy for a minute, and which the state could not prevent, unless, perhaps by doing the recipient the unthinkable wrong of escheating the whole estate.

"We think it clear that our statute, although it makes no provision for any deductions, provides that the tax shall be estimated upon the fair market value of the beneficial interest of the transferee, and that the Legislature by so providing intended that that interest should be estimated at the time and in the condition that he would receive it, rather than at the time and in the condition that technically the title thereto vested in him. This construction, besides being entirely consistent with the language employed, relieves the statute of the manifest injustice of requiring the transferee to pay an inheritance tax upon the amount of the federal tax; leaves undisturbed our decisions that administration costs are deductible; avoids any possible conflict of authority between the state and federal governments; is sustained by the overwhelming weight of authority; and in our judgment is supported by the better reasoning."

The Act of 1919 states in the caption that it shall be known as "The Inheritance Tax Law." The tax is to be computed on the property inherited, or on that to which the beneficiary succeeds as owner. The legislature at the extra session in 1929 not only passed a law "to establish and impose a tax for general State purposes on transfers of property by inheritance and intestate laws of the State," but it enacted another law (chapter 23) entitled "AN ACT to establish and impose an estate

tax," thus showing that the legislature fully comprehended the difference between these two forms of taxes.

In drafting the Act of 1919 the legislature could have very easily stated that the tax was on the right of disposition and not on the privilege of receiving property, or it could have provided for the inclusion of the federal tax in the computation, as it did in the Act of 1929, but it did neither.

Since such statutes are to be strictly constrated against the State and in favor of the taxpayer, deeming it unjust to require the beneficiary to pay a tax on property which he never receives, and being satisfied that such was not the intention of the legislature, we concur with the chancellor in holding the federal tax deductible.

By the third assignment of error complaint is made with respect to the item of $335.43. This was properly allowed as a part of the expense of administration.

By the fourth assignment of error it is insisted that chapter 64 of the Public Acts of 1925 is unconstitutional. The following are the pertinent provisions of the act.

Section 1. "That Section 2 of Chapter 46 of the Acts of the General Assembly of the State of Tennessee for the year 1919, be so amended as to provide that in addition to the exceptions from the operation of such Act as set forth in said section there shall also be excepted from the provisions thereof an amount equal to the value of any property forming a part of the gross estate of any person who died within five years prior to the death of the decedent or transferred to the decedent by gift within five years prior to his death when such property can be identified as having been received by the decedent from such donor by gift, bequest, devise or inheritance or

which can be identified as having been acquired in exchange for property so received, provided that the exception hereby made shall be allowed only when an inheritance tax was paid by or on behalf of the estate of such prior decedent."

Section 3. "That the provisions of this Act shall apply to all estates in process of settlement, regardless of the date of death of the decedent."

Such an exemption is found in the federal estate tax law and in the inheritance tax laws of many of the states. It is expressly embodied in our succession tax law enacted in 1929. The various lawmaking bodies who have incorporated this exemption into their succession tax statutes evidently deemed it unjust to exhaust an estate by the imposition of heavy death duties within a limited time.

In *Rodenbough* v. *United States,* 57 A. L. R., 1095, the United States Circuit Court of Appeals, in discussing the purpose of such an exemption, said: "Realizing that, unless avoided by legislative provision, the same or substantially the same estate would be twice taxed when two deaths occur successively within a short time, the Congress enacted the provisions in question with the general purpose or intention to avoid the hardship and inequity of double taxation. Its particular intention, however, is to be gathered from the particular manner by which, as specified in the statute, it proposed its general purpose should be carried out. Thus, we see the problem which was before the Congress and we have in statutory form the manner in which it met it."

In this particular instance the estate of Mrs. Snowden had paid both a federal and a state tax on these four lots,

valued at approximately $250,000, only a few months before Mrs. Fargason's death.

It is insisted by the State that this statute violates section 8 of article 1 and section 20 of article 1 of our constitution. In their brief, however, counsel for the State argue the single proposition that section 3 of the act involved is retroactive and impairs the obligation of contract. In our opinion, neither contention is sound, and both are refuted by the opinion of this court in *Demoville & Co.* v. *Davidson County,* 87 Tenn., 213. The title to the statute involved in that case was "An Act to relieve druggists of all taxes that have accrued against them as liquor dealers under the revenue laws of 1881-2, 1883-4, and 1885-6." The court held the act valid, and, with respect to its provision releasing accrued privilege taxes, said that the State could forgive its debtor just as an individual could. The opinion contains this relevant language:

"That the act applies alone to past delinquencies, and has no prospective effect, does not make it retrospective legislation in the sense of the Constitution. All release acts or resolutions settling, compromising, or releasing liabilities due to the State are in one sense retrospective, but there can be no doubt that a State may pass such retroactive laws as only waive her own right without violating the Constitution."

In *Chaffin* v. *Johnson,* 200 Iowa, 97, it was expressly held that an exemption, such as is here involved, could be given a retroactive effect.

Having responded to all of the assignments of error, and concluding that they are without merit, it follows that the decree of the chancellor will be affirmed.