11 Wis.2d 345 (1960)
DEPARTMENT OF TAXATION, Appellant,
v.
CITY OF LA CROSSE, Respondent.[*]
Supreme Court of Wisconsin.
October 3, 1960.
November 1, 1960.
*346 For the appellant the cause was argued by John H. Bowers and Harold H. Persons, assistant attorneys general, with whom on the briefs was John W. Reynolds, attorney general.
For the respondent there was a brief by John K. Flanagan, city attorney, and William J. Sauer, assistant city attorney, and oral argument by Mr. Sauer.
BROWN, J.
The will of Mary E. Sawyer bequeathed the residue of her estate to trustees, in trust to pay to Frank F. LaRowe, brother of the testatrix, an annuity of $5,000 during the brother's lifetime. The will then commands:
"Fourth. Upon the death of my said brother, Frank F. LaRowe, I will and direct that said trust be terminated and that the remainder of my estate be distributed by my said trustees or their successors in trust, as follows:
"All the rest, residue and remainder of my estate, real, personal, and mixed, wherever situated, of which I may die *347 seized or possessed, I give, devise and bequeath to the city of La Crosse, Wisconsin, for the purpose of erecting a suitable community building and auditorium for said city of La Crosse, to be known as the `Mary E. Sawyer Auditorium,' and the said community building and auditorium to be constructed under the direction of the proper officers of said city of La Crosse on such location as shall be most suitable in the opinion of the common council of said city."
At the time of Mrs. Sawyer's death, January 29, 1941, Mr. LaRowe was seventy-four years of age. His life expectancy was then 6.68 years. Actually, he lived eight years. His death came in 1949 and the trustees then delivered the trust estate of $647,414.66 to the city.
On the average, under the management of the trustees, the estate produced annual income sufficient to pay the expenses of the estate, the $5,000 annuity to LaRowe, and a surplus of about $7,750. In every year the net income greatly exceeded the requirements of the payments to LaRowe.
In each year the trustees made annual income-tax returns and paid the taxes indicated according to the income tax laws currently in effect. In 1945 the trustees sought a judgment against the Department of Taxation that the net income for 1942 in excess of $5,000 per year was exempt from income taxes. That effort was unsuccessful. The Wisconsin supreme court held that the laws then in effect subjected such income to the tax. First Wisconsin Trust Co. v. Department of Taxation (1945), 248 Wis. 21, 20 N. W. (2d) 647. The trustees had cited federal income-tax cases to which this court answered, page 27, supra, that such cases were not in point because ch. 71 of the Wisconsin statutes does not include a provision similar to the United States statute to the effect "that a trustee shall not be taxed for income received by it which, although not distributed to the beneficiary during the tax year, `is during the taxable year paid or permanently set aside' for charitable, etc., purposes."
*348 At the 1947 session the legislature amended sec. 71.08 (9), Stats., by a declaration whose material part is:
"There shall be exempt from such taxation any part of the gross income, without limitation, which pursuant to the terms of the will, deed, or other trust instrument creating the trust, is during the taxable year permanently set aside to be used exclusively by or for the state of Wisconsin or any city, village, town, ... therein ... Such exemption shall be operative retroactively except in those instances in which an assessment has become final and conclusive under the provisions of chapter 71."
Having filed income-tax returns and having paid income taxes on the income in excess of the expenses and the $5,000 annuity for the years 1944 and 1945 and those assessments not having become final, the trustees filed a claim for refund for the tax on income for those years.
The Department of Taxation denied the refund. While the litigation has been pending the trust has been closed, the residue of the estate has been distributed to the city, and the city has been substituted for the trustees in prosecuting the proceeding for refund.
The city appealed from the decision of the Department of Taxation to the board of tax appeals. The board reversed the department and directed the abatement of the additional assessment, finding:
"1. That the bequests under the will of Mary E. Sawyer have a presently ascertainable value.
"2. That the income of the trust created by the will of Mary E. Sawyer, after the payment of the bequest to Frank F. LaRowe and the cost of operation, was pursuant to the terms of said will during the years in question permanently set aside for the city of La Crosse for the use set forth in said will."
Concluding:
"That such income of the trust was not taxable under sec. 71.08 (9) as amended by ch. 236, Laws of 1947."
*349 And ordering:
"That petitioner's application for abatement of the additional assessment appealed from be granted; that the additional assessment be and the same is hereby canceled."
The Department of Taxation appealed from the decision of the board of tax appeals to the circuit court for La Crosse county. That court affirmed the decision of the board. The judgment of the circuit court has now been appealed to the supreme court by the Department of Taxation.
The department contends that the facts do not fit the requirements of the statute because the 1944 and 1945 surplus income was not committed to the city by Mrs. Sawyer's will and the surplus to be paid to the city is purely speculative. Furthermore, the department says the retroactive provision of the statute, which is the basis of the taxpayer's claim for refund, is unconstitutional, as making an unreasonable classification between assessments which are final and those which are not final at the time the amendment was enacted. And, still further, the department says the amendment violates the constitutional prohibition against the use of public funds for a private purpose.
For the moment we will consider the amended statute, sec. 71.08 (9), aside from the objections to its retroactive feature.
A statute which exempts property from taxation is to be strictly construed in favor of the state. Coulter v. Department of Taxation (1951), 259 Wis. 115, 47 N. W. (2d) 303.
The statute which is before us now is the one which we examined in the Coulter Case. We noted there that a federal statute is couched in substantially the same words as those used in the Wisconsin amended statute, sec. 71.08 (9), that the federal statute antedated the enactment of ours and the courts had interpreted it. Consequently the construction of the federal statute by the United States supreme court has *350 great weight in our own construction of the Wisconsin statute.
The provisions of the Sawyer will seem clear that it permanently sets aside for the exclusive use of the city all of the trust estate minus $5,000 per annum. There are no other contingencies to defeat or divert the bequest to the city. The department contends that the antecedent charge upon the estate of $5,000 per year for LaRowe may exhaust all income earned by the estate in any year, and may even compel an invasion of the corpus. Theoretically, that is so. We have adopted the federal court's rule that the tax deduction "will not be permitted unless it can be readily ascertained what amount will ultimately reach the type of institutions mentioned in the statute." Coulter v. Department of Taxation, supra (p. 120). But in applying that rule the United States supreme court has eliminated consideration of contingencies which, though theoretically possible, are remote. Ithaca Trust Co. v. United States (1929), 279 U. S. 151, 49 Sup. Ct. 291, 73 L. Ed. 647; Merchants Nat. Bank v. Commissioner (1943), 320 U. S. 256, 64 Sup. Ct. 108, 88 L. Ed. 35, cited in both Coulter, supra, and by the board of tax appeals in its present opinion. In the Ithaca Trust Co. Case, supra, the United States supreme court said (p. 154):
"The case presents two questions the first of which is whether the provision for the maintenance of the wife made the gifts to charity so uncertain that the deduction of the amount of those gifts from the gross estate under sec. 403 (a) (3), supra, in order to ascertain the estate tax, cannot be allowed. Humes v. United States, 276 U. S. 487, 494. This we are of opinion must be answered in the negative. The principal that could be used was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. The income of the estate at the death of the testator, and even after debts and specific legacies had been paid, was *351 more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."
The Ithaca Trust Co. and the Merchants Nat. Bank Cases decided inheritance-tax cases, whereas the one now before us is an income-tax case, but the statutory provisions affecting each are so similar that they are appropriate to a determination of the effect of sec. 71.08 (9), Stats. We applied them so in the income-tax case of Coulter v. Department of Taxation, supra.
In both the Coulter and the Merchants Nat. Bank Cases, supra, the court was faced with numerous very evident possibilities which, not at all remotely, might affect the amounts to be received by the charities, and which those courts held were too great to be tolerated by the statute. On the other hand, in the Ithaca Trust Co. Case, supra, the provision for the maintenance of a wife in an undetermined amount taking precedence over the gifts to charity did not render those gifts too uncertain to qualify for the tax exemption. Now, the Sawyer will subordinates the gift to the city only to the certain, specified annual sum of $5,000. As in Ithaca Trust Co., supra, the Sawyer trust income was more than sufficient to satisfy the annuity which has priority over the bequest to the city. The case at bar is a much-clearer one for tax exemption than is Ithaca Trust Co. v. United States, supra.
More-recent federal decisions have followed and applied the Ithaca Trust Co. rule, stating it with greater precision and lending support to the present decision of the board of tax appeals and the judgment of the learned circuit court. Thus:
"We, therefore, conclude that the question whether the corpus, including the capital gains, has been permanently set aside for charitable purposes should be determined by a consideration of the provisions of the will in the light of actual *352 facts respecting the amount of corpus set aside out of which the annuities were to be paid, the income derived therefrom, the amount of annuities, and the degree of probability that corpus will be resorted to for annuity payments....
"We are of the opinion that the evidence established beyond a reasonable doubt that there never will be any recourse to the corpus to pay annuities, and that the corpus was, in fact, permanently set aside in the taxable years for charitable purposes." Commissioner v. F. G. Bonfils Trust (10th Cir. 1940), 115 Fed. (2d) 788, 792, 793.
"We find ourselves in agreement with the court of the Tenth circuit, in Commissioner v. F. G. Bonfils Trust, 115 Fed. (2d) 788, and with the board of tax appeals, that the bare possibility, considered abstractly and merely in terms of power, of an invasion of a fund devoted to charitable purposes, that is so remote that it may not, as a practical matter, be said to exist at all, does not render incapable of definite ascertainment the fund devoted to the beneficent purposes recited in the act. It is idle to speculate upon remote possibilities of diversion of the trust fund to noncharitable uses. If such speculations were dependable criteria for determining deductions, congressional encouragement to private benefaction would prove futile and no charitable trust could escape the charge that it is without the deductible section of the statute. It is true, of course, as noted in the dissenting opinion in the Bonfils Case, that deductions from gross income depend upon legislative grace; that the usual presumptions in favor of the taxpayer do not apply when exemption from taxation is claimed; and that when the taxpayer seeks deduction, authority therefor must be found in the statute and he must bring himself within its terms. This does not mean, however, that the problem may not be viewed realistically as in the Bonfils Case, or that the plain intent of congress to encourage charitable contributions by relieving them from taxation should be ignored. Lederer v. Stockton, 260 U. S. 3, 43 Sup. Ct. 5, 67 L. Ed. 99; ..." Commissioner v. Upjohn's Estate (6th Cir. 1941), 124 Fed. (2d) 73, 76.
In 1945 the trust estate received capital gains of $68,231.34. Though there are distinctions between capital gains and ordinary income, those distinctions are not involved *353 here. For present purposes the capital gains are treated as income.
We conclude that sec. 71.08 (9), Stats., exempts from taxation the income of the Sawyer trust over and above $5,000 in the years 1944 and 1945 unless the retroactive feature of that statute is unconstitutional. The exemption from tax of any part of the 1944 and 1945 income bequeathed to the city depends upon the constitutionality of the retroactive provision of the statute.
The department submits that the distinction between the retroactive exemptions allowed to assessments which have not become final and conclusive and refused to assessments which have become final and conclusive is a distinction not based on reason, is arbitrary and not dependent on any material difference in the facts and cannot sustain separate classifications of taxpayers. Hence, the department contends, the retroactive portion of the statute is unconstitutional. In its essentials, the department's argument attempts to apply the decision of Will of LeFeber (1937), 223 Wis. 393, 271 N. W. 95. The legislature had enacted a retroactive inheritance tax upon decedents' estates which had not been closed but did not impose the tax on estates which had been closed. In holding the statute unconstitutional we said (p. 399):
"The only semblance of support for the classification here involved is that the method of collection of the tax is more convenient in estates not closed than in closed estates. This does not in our opinion constitute a sufficient basis for classification. It has not `fair and substantial relation to the object of the legislation,' as it must have under the rule of Colgate v. Harvey, supra. The plain, blunt, unavoidable fact is that recipients of inheritances by deaths occurring at the same time are not taxed if the decedents' estates happened to be closed at the time of the enactment and are taxed if they happened not to be. This discrimination cannot be excused *354 merely because a means of collection available in a case in one class is not available in a case in the other."
The department submits that the same situation as in the LeFeber Case exists now concerning sec. 71.08 (9), Stats., because the finality and conclusiveness of assessment may occur at various unstated and unpredictable times under the statute. As the closing of estates may occur at various times and create a tax difference although the decedents may die on the same day, so the finality and conclusiveness of income-tax assessments may occur at different times and produce different tax results although the income of the several taxpayers is earned in the same year.
The department fails to realize that, unlike the unconstitutional statute of the LeFeber Case, all taxpayers have the same duties and privileges. The income is that of a calendar or a fiscal year, as the taxpayer may choose. Each taxpayer must make a return by a fixed date after the close of that year. Limited extensions of the final date are available and the same extensions are permitted to all. If any taxpayer wants to protest an assessment, thus postponing the conclusive day of assessment, he may do so within a specified time, an opportunity which is given to all. The privilege of contest and the duty of acting within stated periods under penalty of losing the right by nonaction are the same for each taxpayer. This is quite a different matter from the statute held void in the LeFeber Case, where there was no uniformity in regulating the rights or obligations of taxpayers. In ch. 71, Stats., the present income tax statute, specific rights and the periods in which they must be exercised are available to all without discrimination. It is not unconstitutional discrimination between taxpayers by putting in a separate class those who have availed themselves of their rights to extend the date of finality of assessment, the opportunity to do so having been given to all. This is not a statute-of-limitations case, *355 but there is a similarity, and no more now than in the limitation cases is the loss of rights consequent upon failure to preserve them a reason to declare the statute unconstitutional.
Lastly, the department says the authorization of a retroactive tax refund is an unconstitutional appropriation of public money for private purposes. Provisions for tax refunds are of long standing in the statutes. The Department of Taxation has long operated under the refunding provisions of ch. 71, Stats., and at this late day we think there is little merit in a contention that a refund constitutes an illegal and unconstitutional use of public funds for a private purpose. The department has not suggested that the Sawyer trust assessment, and consequently the tax payment, has become final and conclusive. As long as the assessment is not yet final and conclusive, as the department concedes to be so, we consider the statutory provisions for refund are available to the taxpayer without a constitutional violation.
We conclude that the judgment of the trial court should be affirmed.
By the Court.Judgment affirmed.
CURRIE, J. (concurring.)
I fully concur in the court's opinion herein, but wish to add some comments with respect to the constitutionality of the retroactive feature of the amendment made by the legislature in 1947 to sec. 71.08 (9), Stats.
The taxes in controversy are those for the calendar years of 1944 and 1945. There apparently was no express provision in the statutes prior to 1947, comparable to present sec. 71.10 (10), which permitted a taxpayer to file a claim for refund with respect to income taxes already paid. There was a provision in sec. 71.10 (6) (d), Stats. 1945, for a refund, if an audit by the department disclosed an overpayment. Under sec. 71.115 (1) (b), Stats. 1945, in order for *356 the department to assess additional income taxes found due on an audit of the taxpayer's return, notice of the proposed assessment was required to be served not later than three years after the close of the taxable year for which such return had been filed.
Then in 1947 the legislature enacted ch. 318, Laws of 1947, which created sec. 71.10 (10), Stats., giving taxpayers the right to file claims for refund. Later in the session the same legislature enacted ch. 557, Laws of 1947, which amended sec. 71.10 (10) (b) so as to limit the taxable years for which such claim for refund could be filed to not more than three such years next preceding the filing of the claim. Such limitation has now been extended to four instead of three years by the amendment enacted by ch. 3, Laws of 1955.
The significance of this statutory history is that the 1947 legislature, which enacted the retroactive exemption, also at the same session created the means by which a taxpayer could extend the period beyond which the assessment of his tax would become final and conclusive by filing a claim for refund. Thus all taxpayers were treated exactly alike prospectively in this respect.
There remains the other possibility that a taxpayer's assessment at the time the retroactive exemption was enacted may have had the period, during which an additional assessment of tax might be made, extended by the prior act of the department in serving notice of an additional assessment. However, the department made no showing before either the board of tax appeals, or the circuit court, that any such an extension of the limitation period had taken place in this manner involving any trust entitled to the retroactive exemption. The instant taxpayer trustees did not fall in such category because the tax years of 1944 and 1945 were within the three-year-limitation period when the exemption statute was enacted in 1947. A classification should not be held *357 unconstitutional as being discriminatory, and, therefore, a denial of the equal-protection-of-the-laws clause of the Fourteenth amendment, upon a mere theoretical possibility that there may be discrimination. In the instant case, before the department should be permitted to raise such a constitutional issue, it was incumbent upon it to establish by proof that some trustee taxpayers, who stood to benefit retroactively by the exemption, had had their limitation period extended as a result of the department's serving notice of additional tax within such period.
There is a distinct possibility that there were no trustee taxpayers who fell in such class. Even if there were a limited few, this would not require that we hold the retroactive feature of the exemption unconstitutional. A classification having some reasonable basis does not offend the equal-protection clause of the Fourteenth amendment because it is not made with mathematical nicety or scientific exactness, or because in practice it actually results in some inequality. 16A C. J. S., Constitutional Law, p. 321, sec. 505; Bayside Fish Flour Co. v. Gentry (1936), 297 U. S. 422, 429, 56 Sup. Ct. 513, 80 L. Ed. 772.
NOTES
[*] Motion for rehearing denied, without costs, on January 10, 1961.