Fᴜʟᴛᴏɴ Fᴏᴜɴᴅᴀᴛɪᴏɴ and others, Respondents, ᴠ. Dᴇᴘᴀʀᴛ-
ᴍᴇɴᴛ ᴏғ Tᴀxᴀᴛɪᴏɴ, Appellant.*

*February 7—March 7, 1961.*

* Motion for rehearing denied, without costs, on May 2, 1961.

4

For the appellant the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the briefs were *John W. Reynolds,* attorney general, and *Harold H. Persons,* assistant attorney general.

For the respondents there was a brief by *Foley, Sammond & Lardner* and *Frederic Sammond* and *James R. Modrall,* attorneys, and *Bender, Trump, Davidson & Godfrey* and *Walter H. Bender* and *Kneeland A. Godfrey* of counsel, all of Milwaukee, and oral argument by *Mr. Frederic Sammond* and *Mr. Modrall.*

CURRIE, J.    Sec. 72.75 (5) (a), Stats. 1947, provided as follows:

"All property transferred to municipal corporations within the state for strictly county, town, or municipal purposes, or to *corporations* or voluntary associations *of the state, organized under its laws, solely* for religious, humane, *charitable,* or educational *purposes, . . . which shall use such property*

*exclusively for the purposes of their organization within the
state, . . .* shall be exempt [from gift tax]." (Italics sup-
plied.)

Ch. 356, Laws of 1949, repealed and then re-created such
statute so as to drastically broaden the definition of gifts
exempt from taxation. Ch. 634, Laws of 1949, renumbered
such re-created statute sec. 72.79 (1). New sec. 72.79 (1)
provided as follows:

"The following transfers are exempt from such [gift] tax:
"(1) All transfers of property to . . . *any corporation,
. . . operating principally within this state, organized and
operated exclusively for . . . charitable, . . . purposes,
. . .* no part of the net income of which inures to the benefit
of any private stockholder or individual; . . . For the pur-
poses of this section, *a corporation, . . . shall be considered
as operating principally within this state if 50 per cent or
more of its funds, expended during the period from July 9,
1933, to December 31, 1948,* or to the close of its fiscal year
immediately preceding the date of such transfers (or ex-
pended in its first fiscal year in the case of a transfer during
such fiscal year to or by such an organization created after
December 31, 1948), whichever is later, *have been used
within this state for the purposes of its organization or have
been contributed to a donee or donees transfers to which are
exempt under this section."* (Italics supplied.)

Sec. 2 of ch. 356, Laws of 1949, provided:

"This act shall apply to all transfers of property made in
the calendar year 1949 and subsequent calendar years and to
all transfers of property prior to 1949 on which the gift tax
has not been paid prior to the enactment hereof."

Such ch. 356, Laws of 1949, became effective on June
30, 1949. As of that date, no gift taxes had been paid on
the 1948 transfers by Mr. and Mrs. Fulton to the Founda-
tion, although, if any such taxes were payable, they were then
delinquent.

The department cites the general rule that statutes creating
exemptions from taxation are to be strictly construed against

the taxpayer and in favor of the taxing authority. *Mitchell v. Horicon* (1953), 264 Wis. 350, 352, 59 N. W. (2d) 469, and *Comet Co. v. Department of Taxation* (1943), 243 Wis. 117, 123, 9 N. W. (2d) 620. However, there is some division of authority as to whether this strict rule of construction is to be invoked with respect to exemptions from inheritance tax accorded to transfers to charitable organizations. 28 Am. Jur., Inheritance, Estate, and Gift Taxes, p. 51, sec. 48; 85 C. J. S., Taxation, p. 977, sec. 1161 b; Anno. 149 A. L. R. 1333, 1336. This court by way of dictum in *Estate of Johnston* (1925), 186 Wis. 599, 601, 203 N. W. 376, stated:

"Respondent claims that the courts, in construing the inheritance tax laws, look with favor upon bequests to charitable and educational institutions, and that the statute exempting such bequests should be favorably construed in their behalf. To this point respondent cites *Estate of Spangler,* 148 Iowa 333, 127 N. W. 625; *Morrow v. Smith,* 145 Iowa 514, 124 N. W. 316; *Estate of Curtis,* 88 Vt. 445, 92 Atl. 965; *Estate of Rockefeller,* 223 N. Y. 563, 119 N. E. 1074. The decisions above referred to fully support the doctrine contended for, and undoubtedly such doctrine as so enunciated constitutes good law, . . ."

The California court in *Estate of Fleming* (1948), 31 Cal. (2d) 514, 520, 190 Pac. (2d) 611, 614, stated that "exemptions in favor of charitable organizations are liberally construed so as not to diminish their available resources in the distribution of their ultimate benefits." On the other hand, the Connecticut court in *Hoenig v. Connelly* (1954), 141 Conn. 266, 105 Atl. (2d) 775, 778, held that a statute exempting charitable organizations from a succession tax must be strictly construed. These two cases well illustrate the division of authority on this question of how statutes extending exemptions from inheritance and estate taxes are to be construed. Gift taxes are in *pari materia* with inheritance and estate taxes and, therefore, the rule of

construction applicable to the former would also apply to the latter.

Gifts to charitable organizations are favored by the law generally. Because of this, the words of the gift-tax exemption statute before us for interpretation should not be accorded a strained or unusual meaning in the guise of applying a rule of strict construction, but rather their plain and ordinary meaning. The key word is *"operating."* It is synonymous with acting. If the Foundation engaged in any activities during the few days of its existence in the last week of 1948, it was *"operating."* The election of directors and officers at the organization meetings held, the adoption of by-laws, and the acceptance and retention of the gifts of corporate stock from Mr. and Mrs. Fulton, all constituted activities of the Foundation. As all of these acts were performed in Wisconsin, the Foundation necessarily was *"operating principally within this state"* in 1948 within the provisions of sec. 72.79 (1), Stats. 1949, unless the so-called "50 per cent test" of this statute was intended by the legislature to be exclusive.

It is the position of the department that such "50 per cent test" is exclusive. Such test is set forth in that portion of sec. 72.79 (1), Stats. 1949, which provides, "For the purposes of this section, a corporation . . . shall be considered as operating principally within this state if 50 per cent or more of its funds, expended during the period from July 9, 1933, to December 31, 1948, . . . have been used within this state for the purposes of its organization or have been contributed to a donee or donees transfers to which are exempt under this section."

We consider the case of *Greenebaum v. Department of Taxation* (1957), 1 Wis. (2d) 234, 83 N. W. (2d) 682, to be controlling with respect to whether the "50 per cent test" of the statute is exclusive. In that case we had for construction an income tax statute which granted an exemption from tax to dividends received from corporations

subject to Wisconsin income tax whose principal business "must be attributable to Wisconsin." The exemption statute further provided (p. 235) :

". . . for the purpose of this subsection any corporation shall be considered as having its principal business attributable to Wisconsin if 50 per cent or more of the entire net income or loss of such corporation after adjustment for tax purposes (for the year preceding the payment of such dividends) was used in computing the taxable income provided by chapter 71."

This court held in the *Greenebaum Case* that the aforequoted statutory provision was not made the sole and exclusive test of whether the principal business of the dividend-paying corporation was attributable to Wisconsin. We are unable to distinguish the "50 per cent test" embodied in the statute before the court in the *Greenebaum Case* from the similar one found in sec. 72.79 (1), Stats. 1949.

Under the argument advanced by the department, if the Foundation had made a $100 token contribution to a Wisconsin charitable organization in December, 1948, then the transfers to it from Mr. and Mrs. Fulton in 1948 would be exempt from gift tax. We cannot believe that the legislature ever intended the exemption to be dependent on such a trivial happenstance.

Before the circuit court, and now before this court, the department has attempted to raise the issue that the retroactive feature of the exemption contained in sec. 72.79 (1), Stats. 1949, is unconstitutional. It is asserted that such retroactive exemption is unconstitutional on the following two grounds:

(1) Inasmuch as the gift tax was already due upon the transfers in question when the 1949 legislature created the exemption, the exemption thereof from tax constitutes an expenditure of public funds for a private purpose; and

(2) It constitutes a denial of the equal protection of the laws under the Fourteenth amendment.

The circuit court in its memorandum opinion held that the department, being an administrative agency, "is a mere creature of the legislature, and as such is totally without authority to question the constitutionality of legislative acts, any more than a municipality may question the constitutionality of a statute delegating a primary government function to it." The correctness of such determination is challenged on this appeal.

It is surprising that this court has not been required to directly pass on such question long prior to this. As recently as last October the department challenged the constitutionality of a retroactive exemption in an income tax statute, and the taxpayer raised no issue with respect to its right to do so. *Department of Taxation v. La Crosse* (1960), 11 Wis. (2d) 345, 105 N. W. (2d) 800. Because the right of the department to raise the issue of constitutionality was not therein challenged, such case has no efficacy as a precedent with respect to such question.

The Wisconsin precedent closest in point is the following statement appearing in the opinion of Mr. Justice WICKHEM written for this court in *Amerpohl v. Tax Comm.* (1937), 225 Wis. 62, 71, 272 N. W. 472:

"It is next contended that the Tax Commission may not attack the constitutionality of these sections, and that the respondents, being mere arms of the state, have no standing to question constitutionality of an act of the legislature. In *Sweeney v. State,* 251 N. Y. 417, 167 N. E. 519, 520, it is said:

" 'Certain it is that the state which enacted it may not be heard to complain that the enactment is void as a violation of "due process." ' '

"The claim is that the official interest of respondents is not sufficient to permit invoking the constitution against a law they are required to enforce. This is merely a restatement of the proposition that a party claiming a law to be invalid under the constitution must show that he is injured

by its application. See *Turpin v. Lemon,* 187 U. S. 51, 23 Sup. Ct. 20; *Anderson v. State,* 221 Wis. 78, 265 N. W. 210. All of these rules are well established and require no discussion here."

However, the afore-quoted extract from the opinion in the *Amerpohl Case* is dictum because of the holding in the case that the United States supreme court had previously decided that the tax statute in question was unconstitutional, and, therefore, the tax commission was required to respect and carry out the mandate of that court.

The general rule is that state agencies or public officers cannot question the constitutionality of a statute unless it is their official duty to do so, or they will be personally affected if they fail to do so and the statute is held invalid.[1] A case illustrating the application of such general rule is *Assessors of Haverhill v. New England Telephone & Telegraph Co.* (1955), 332 Mass. 357, 124 N. E. (2d) 917. The assessors appealed from a decision of the appellate tax board abating a tax levied upon the property of the utility company and contended that the statute applied by the board was unconstitutional. The court in its opinion stated (332 Mass. p. 362):

"But there is a further underlying reason why this appeal cannot succeed. No personal or property rights of the assessors are here involved. 'It is a general principle that no one can question in the courts the constitutionality of a statute already enacted except one whose rights are im-

---

[1] *Columbus & Greenville R. Co. v. Miller* (1931), 283 U. S. 96, 99, 51 Sup. Ct. 392, 75 L. Ed. 861; *Mallet v. Harper* (1936), 182 Ga. 506, 185 S. E. 798; *Louisiana Motor Vehicle Comm. v. Wheeling Frenchman* (1958), 235 La. 332, 103 So. (2d) 464; *State ex rel. S. S. Kresge Co. v. Howard* (1948), 357 Mo. 302, 208 S. W. (2d) 247; *Black River Regulating Dist. v. Adirondack League Club* (1954), 307 N. Y. 475, 121 N. E. (2d) 428; *State ex rel. Johnson v. Baker* (1946), 74 N. D. 244, 21 N. W. (2d) 355; 11 Am. Jur., Constitutional Law, p. 762, sec. 117; 16 C. J. S., Constitutional Law, p. 251, sec. 82 a.

paired thereby.' [Citing cases.] This rule extends to public officers whose private rights are not involved."

The reply brief submitted in behalf of the department points out that this court permitted the state director of budget and accounts to challenge the constitutionality of statutes enacted by the legislature in *State ex rel. Thomson v. Giessel* (1955), 271 Wis. 15, 72 N. W. (2d) 577; *State ex rel. Larson v. Giessel* (1954), 266 Wis. 547, 64 N. W. (2d) 421; and *State ex rel. Thomson v. Giessel* (1952), 262 Wis. 51, 53 N. W. (2d) 726. However, sec. 15.16 (6), Stats. 1951 to 1957, imposed upon such director of budget and accounts, the duty of approving of all state purchase orders and contracts calling for the expenditure of state funds. Included in these duties was the passing on the legality of the purpose of the expenditure. The negligent or wilful violation of such duty might render him personally liable.[2] This afforded him sufficient personal interest to entitle him to properly raise the issue of constitutionality in situations where his prior approval was required before expenditures of state funds could be made.

In the recent case of *Yelle v. Bishop* (1959), 55 Wash. (2d) 286, 347 Pac. (2d) 1081, the Washington court permitted the state auditor to raise the issue of the constitutionality of a statute on the ground that a question of great public interest was involved. The Minnesota court permits a public officer to raise a constitutional issue where "the question is affected with a public interest." *Loew v. Hagerle Brothers* (1948), 226 Minn. 485, 487, 33 N. W. (2d) 598. However, in both of those cases the particular officers involved were charged with the control of public funds.

---

[2] For cases holding that public officers, who are charged with the control of public funds may challenge the constitutionality of statutes, see *Carroll v. Socony-Vacuum Oil Co.* (1949), 136 Conn. 49, 68 Atl. (2d) 299; *Green v. Pensacola* (Fla. App. 1959), 108 So. (2d) 897; *Solberg v. State Treasurer* (1952), 78 N. D. 806, 53 N. W. (2d) 49; *Gross v. Gates* (1937), 109 Vt. 156, 194 Atl. 465.

In the instant case the department has no personal interest in the constitutional issues raised. This is because it is not charged by any statute with the duty of determining the validity of any tax statute it administers,[3] nor would the tax commissioner, or any other employees, of the department be held personally liable if they failed to do so. Nor does the department control the expenditure of public funds. Ordinarily these factors would preclude it from attacking the validity of the tax statutes which the legislature has intrusted to its administration. Nevertheless, we hesitate to lay down a hard and fast rule that the department may never raise an issue of constitutionality of the tax statutes that it is charged with administering. However, we deem the exceptional situation in which it will be permitted to do so should be limited to situations involving issues of great public concern.

When we apply the test of great public concern to the two issues of unconstitutionality raised by the department in the instant case we find one falls within such category and one does not. The issue of whether public funds are being diverted to a private purpose clearly is a matter of great public interest. On the other hand, the question, of whether an exemption from gift tax extended to certain transfers to charitable organizations has been withheld from other similar transfers, is hardly a matter of great public concern. Therefore, with respect to such latter issue we approve the holding of the trial court that the department is not permitted to raise such issue.

The theory, under which the department contends that the retroactive exemption extended by sec. 72.79 (1), Stats. 1949, to the 1948 transfers made to the Foundation constitutes a diversion of public funds to a private purpose,

---

[3] We have no issue present in the instant case of the attorney general's right to question the constitutionality of a state statute. This is because the attorney general is not a party in the instant case and only appears as counsel for the department.

is that, because the gift taxes on such transfers were already past due when such exemption statute was enacted, such taxes possessed the status of public funds.

Our Wisconsin constitution contains no general provision prohibiting the release or compromise of claims and no specific provision prohibiting the release or compromise of tax claims. A tax is not necessarily unconstitutional because it is retroactive. *Welch v. Henry* (1938), 305 U. S. 134, 59 Sup. Ct. 121, 83 L. Ed. 87, 118 A. L. R. 1142, affirming 226 Wis. 595, 277 N. W. 183; and *Appeal of Van Dyke* (1935), 217 Wis. 528, 549, 259 N. W. 700. This being true, it ought to follow that a general law retroactively granting exemptions from taxes recently accrued or paid is not an expenditure of public funds for a private purpose.[4] We in effect so held in *Department of Taxation v. La Crosse, supra,* recently decided.

The principal authority relied upon by the department is *State ex rel. Larson v. Giessel, supra.* In that case we cited authorities holding (p. 552), "that the legislature has no power to compel the refund of taxes legally collected." However, there is no provision in either the federal or state constitutions which would prohibit the Wisconsin legislature from enacting a general retroactive tax-exemption statute, such as sec. 72.79 (1), Stats. 1949. Our legislature does not derive its powers from the state constitution but the same are plenary in nature except as limited by such constitution. *Cutts v. Department of Public Welfare* (1957), 1 Wis. (2d) 408, 416, 84 N. W. (2d) 102. The determination by the legislature that a public and not a private purpose is served is implicit in all statutes which grant tax exemptions general in scope. Ordinarily such a legislative determination is conclusive upon this court.

---

[4] The Tennessee court has held valid in *Bank of Commerce & Trust Co. v. McLemore* (1931), 162 Tenn. 137, 35 S. W. (2d) 31, a statute which retroactively extended a certain exemption from inheritance tax to estates of all persons who had died within five years prior to the enactment of such statute.

There undoubtedly is a time limitation beyond which the legislature cannot proceed retroactively to exempt from tax so as to compel a refund of taxes already paid. However, it seems clear that such time limitation was not exceeded with respect to the application of the retroactive exemption to the unpaid gift taxes due on the 1948 transfers to the Foundation in the instant case.

In view of the foregoing, we determine that the application of the retroactive exemption of sec. 72.79 (1), Stats. 1949, to the instant transfers does not constitute an expenditure of public funds for a private purpose. Anything stated by way of dictum in *State ex rel. Larson v. Giessel, supra,* which would conflict with such determination is withdrawn.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J., dissents.

The following opinion was filed May 2, 1961:

CURRIE, J. (*on motion for rehearing*). In view of the forceful and persuasive arguments advanced by the attorney general in the brief filed by the department in support of its motion for rehearing, we have reconsidered our original holding, that a question of whether a particular tax exemption denies the equal protection of the laws, is not of great public concern.

Such original determination had been motivated by the view that, while the granting of a particular tax exemption by the legislature might be of particular interest to other taxpayers to whom the exemption was not made applicable, it was not of great interest to the public at large. Upon further reflection we are convinced such issue should be held to present a question of great public interest. This is because the extending of special privileges by way of discriminating tax exemptions, which deny the equal-protection-of-the-laws requirement of the Fourteenth amendment,

have a tendency to undermine the faith of citizens in the integrity of their state government. Therefore, we withdraw that part of the original opinion which determined that the equal-protection-of-the-laws issue was not of great public concern, and now hold that the department should be permitted to raise such constitutional issue.

There is a further reason of policy for holding that the department should be permitted to raise this particular issue of constitutionality. This is that unless the department is permitted to do so there is little likelihood that any taxpayer will. The situation is different with respect to the enactment of a statute imposing a new tax which denies the equal protection of the laws. There the constitutional issue is very likely to be raised by the taxpayer against whom an attempt is made to assess and collect the tax.

In *Associated Hospital Service v. Milwaukee,* post, p. 447, 109 N. W. (2d) 271, we have reviewed the legal principles which are applicable in determining whether a tax-exemption statute denies the equal protection of the laws. We will not here repeat the authorities cited in such opinion. The classification made by the legislature in granting a particular tax exemption must be sustained as not arbitrary or unreasonable if there is any conceivable basis in reason therefor.

When the legislature made the instant classification, in drawing the line with respect to which transfers should be retroactively exempted from gift tax, it drew the same on the basis of whether or not the previously imposed tax had already been paid. There exists a serious question of whether our legislature may constitutionally grant a retroactive tax exemption, which requires the refunding from the state treasury of taxes already paid, without running athwart of the implied restriction of our state constitution that public funds may not be appropriated for a private purpose.

In our original opinion herein we held that there was a time limitation beyond which the legislature cannot pro-

ceed retroactively, so as to compel a refund of taxes already paid. Our opinion in *State ex rel. Larson v. Giessel* (1954), 266 Wis. 547, 64 N. W. (2d) 421, is open to the interpretation that a refund of taxes already legally collected by way of a granting of a retroactive exemption from tax would constitute an expenditure of public funds for a private purpose. We see no reason to now either repudiate or affirm such interpretation. It is sufficient to sustain the classification made by the legislature to point out that a conceivable basis for the same is the reasonable doubt as to whether the exemption would have been constitutional if it had required the refund of taxes already paid.

We deem the case of *Cahen v. Brewster* (1906), 203 U. S. 543, 27 Sup. Ct. 174, 51 L. Ed. 310, controls the disposition of the instant issue of constitutionality. In that case the state of Louisiana had imposed a retroactive inheritance tax but in effect exempted therefrom estates of decedents that were finally closed at the time of enactment. This classification was attacked as being a denial of the equal-protection-of-the-laws clause of the Fourteenth amendment. In disposing of such contention the supreme court stated (p. 552):

"But, as we understand, the supreme court [of Louisiana] made the validity of the tax depend upon the very fact which counsel attack as an improper basis of classification. The court decided that the property bequeathed was property the state could tax, 'until it had passed out of the succession of the testator.' It was certainly not improper classification to make the tax depend upon a fact without which it would have been invalid. In other words, those who are subject to be taxed cannot complain that they are denied the equal protection of the laws because those who cannot legally be taxed are not taxed."

The department's brief cites the holding of this court in *Will of LeFeber* (1937), 223 Wis. 393, 271 N. W. 95, as being in conflict with *Cahen v. Brewster, supra.* If

such conflict exists we would be duty bound to defer to the United States supreme court's holding in the latter case because that court is the final arbiter of issues of constitutionality arising under the Fourteenth amendment. However, there is no conflict between the holdings of the two cases. This is apparent from the following statement appearing in the opinion in the *LeFeber Case* (p. 399) :

"The only semblance of support for the classification here involved is that the method of collection of the tax is more convenient in estates not closed than in closed estates."

This would indicate that it was not sought to sustain the classification in the *LeFeber Case* on the ground that there was a reasonable doubt as to whether a retroactive inheritance tax could be constitutionally levied upon the assets of an estate which had been closed.

It is to be noted that the department here contends that a retroactive exemption of gift tax which would be made applicable to transfers, on which the gift taxes had already been paid, would be unconstitutional under the state constitution.

If gift taxes were imposed on the transfers in question by the applicable gift tax statutes in effect at the time the legislature enacted ch. 356, Laws of 1949, so as to provide for the retroactive exemption of the same, the gift taxes were then already past due. Thus such retroactive exemption may have benefited some taxpayers who had failed to pay gift taxes when due while others, who had paid gift taxes which had accrued during the same period, were denied such exemption. One may question the wisdom of such a policy, but the determination of such policy lay within the province of the legislature and not this court.

In the instant case the plaintiffs exercised their election under sec. 71.12 (2), Stats., to deposit with the state treasurer the amount of the gift taxes sought to be collected by the department. Under such statute, upon conclusion of

this case, the state treasurer is required to refund the amount of any overpayment with interest at five per cent. Thus, such deposit in effect is one in escrow and the amount of the same in no sense constitutes public funds. Therefore, the making of the refund in no sense can be considered an expenditure of public funds for a private purpose.

*By the Court.*—The motion for rehearing is denied without costs.

BROWN, FAIRCHILD, and HALLOWS, JJ. (*dissenting on motion for rehearing*). We agree that the constitutional question could properly be raised by the department of taxation and the attorney general, but disagree with the conclusion that the retroactive feature of the statute is valid.